SPOFFORD *et al. v.* SOUTHERN BOULEVARD R. Co.

(*Common Pleas of New York City and County, Special Term.* February 23, 1889.)

1. EMINENT DOMAIN—STREET RAILROADS—CONSTRUCTION ON HIGHWAY—COMPENSATION.
   Act N. Y. April 9, 1867, for laying out, etc., a certain highway provided (section 24) that nothing therein contained should affect the rights of the land-owners to recover of any person or corporation constructing a railroad on such highway compensation therefor. *Held,* that the public did not take the fee to the land occupied by the highway, and that such land-owners were entitled to compensation from a street railroad company constructing its road thereon.
2. DUE PROCESS OF LAW—EMINENT DOMAIN—REVOKING RIGHT TO COMPENSATION.
   The legislature cannot revoke the right to such compensation.
3. LEGISLATIVE POWERS—AMENDMENT OF STATUTE.
   The act of 1867, having provided that no railroad should be constructed on such highway without a special act for that purpose, it may be amended so as to permit the construction of a road by a company organized under the general act of 1884.
4. INJUNCTION—STREET RAILROADS—CONSTRUCTION ON HIGHWAY.
   The land-owners are entitled to have a street-railroad company which proposes to build its road on such highway without just compensation perpetually restrained therefrom, though they may have a remedy at law.

On demurrer to complaint.

Joseph L. Spofford and Paul N. Spofford, plaintiffs, are the surviving executors and trustees of Paul Spofford, deceased, who, prior to 1867, owned in fee-simple land formerly in West Farms, and now in the city of New York. On the 9th of April, 1867, an act was passed entitled "An act to authorize the towns of Morrisania and West Farms to widen, make, extend, and improve a highway in said towns, to be called 'The Southern Boulevard,'" and section 24 provided that "said road, when constructed, shall be kept and maintained for the public use as an avenue and boulevard, and, except for the purposes of crossing the same, no railway or tramway shall be laid or constructed thereon, or upon any part thereof, by any persons or corporations whatsoever, without a special act of the legislature of the state for that purpose first had and obtained; and in case the legislature of the state shall, at any future time, grant to any person or corporation the right to construct any rail or tram way upon said road, or any part thereof, nothing in this act contained shall be construed to affect or cut off the rights of the several owners of land, which shall be taken for laying out the road hereby authorized, to claim and recover from such person or corporation the full value of all the land taken from such owner or owners for the road hereby authorized to be

constructed, to the same extent as if no such road had ever been laid out on said lands, and without any deduction for any supposed benefit to said lands to arise from the construction of such rail or tram way." The Southern boulevard was accordingly opened and laid out as a highway, and has since been constantly used for such purpose. A portion of the lands, formerly belonging to Paul Spofford, was condemned, and is included in the boulevard. In 1887 an act to amend the act of 1867 was passed, providing that section 24 be amended so as to read as follows: "Said road, when constructed, shall be kept and maintained for the public use as an avenue and boulevard, and no railway or tram way shall be laid or constructed thereon except by a railroad company which has been or may hereafter be duly organized under and by virtue of and in conformity with the provisions of chapter 252 of the Laws of 1884, and which has heretofore complied or shall comply with all the provisions of said chapter in respect of the consent of owners of property and the local authorities." Defendant is a corporation, organized under Laws 1884, c. 252, (the general act for the organization of horse-railway companies,) for the purpose of constructing and operating a line of street cars in the Southern boulevard, and complied with the requirements of that act in respect to obtaining consent of the owners of more than one-half in value of the property bounding the line, and of the proper local authorities. The action is for a perpetual injunction. Defendant demurs to the complaint, on the ground that it does not set forth facts sufficient to constitute a cause of action.

*E. P. Johnson,* for plaintiffs.   *Frederic R. Coudert,* for defendant.

LARREMORE, C. J.   Obviously the public authorities did not, by the passage of the act of 1867, and the proceedings thereunder, acquire the fee to the land of plaintiffs' testator. This fact is even clearer in the case at bar than it was in *Cemetery* v. *Railroad Co.,* 68 N. Y. 591, where it is held that in construing a statute authorizing the taking of private property for public use, in the absence of express words, a fee will not be deemed to be taken where the language and purposes of the act can be satisfied by the taking of an easement. Here not only is there an absence of express words showing an intention to take a fee, but it appears affirmatively that no such intention existed. The provision in section 24 of the act of 1867, reserving to the original owners of the land the right to claim and recover compensation from any person or corporation who should subsequently, under legislative authority, proceed to construct a railroad, is inconsistent with the idea that absolute ownership was acquired under such act. It has been established by a number of cases prior to *Craig* v. *Railroad Co.,* 39 N. Y. 404, that the use of land for a railroad imposes upon the owner of the fee a greater and additional burden to that imposed by the use thereof as an ordinary highway. In the case last named it was further held that there is the same substantial difference in the burden of the easement, though the cars be propelled by horses instead of steam. The following language is from the opinion of the court, at pages 409, 410, and 411: "I am at loss to see any apparent distinction in the application of the rule between cases where steam-power is employed and those cases where the road is operated by horse-power. It is true, there is some difference in the manner in which the road is constructed, and in the speed with which its cars are propelled, at times, but there is precisely the same exclusive appropriation of the track for the purposes intended in each case, to the absolute exclusion of all who may interfere with its mode of operation. * * * The use of a railroad, no matter how it is operated, whether by horse or steam power, necessarily includes, to a certain extent, an exclusive operation of a portion of the highway for the track of the road, and the running of its cars by the company, and a permanent occupation of the soil. It requires that all other parties shall stand aside and make way for its progress. This is clearly inconsistent with the legal object and design of a highway, which is entirely

open and free to all for purposes of locomotive travel and transportation."
Presumably the compensation paid to plaintiffs' testator in 1867, when an
easement was taken in his land for purposes of a mere highway, was propor-
tioned to that limited use thereof.    This would be the ordinary presumption,
and it amounts to a certainty in the present case, in view of the fact that the
act itself contained a provision protecting the owners' rights to further com-
pensation when the more burdensome servitude should be acquired.    This
right to additional compensation still exists, and if one effect of the amending
statute of 1887 was to defeat such right, so much of said amending act as as-
sumed to repeal the authority to claim and recover extra compensation would
be unconstitutional, and void.    The proposition is stated thus hypothetically,
because I am of the opinion that the right in question would have existed
even without express statutory reservation thereof, and therefore it is imma-
terial whether a superflous statutory provision shall or shall not be considered
abrogated.    Because the public have by purchase acquired certain privileges
in plaintiffs' land, the state cannot proceed to confiscate the remaining rights
therein.    This would be depriving plaintiffs of property without due process
of law or just compensation, and the act would be fully as unconstitutional
whether it did or did not repeal an express statute.    The principal value of
that part of the act of 1867 which declares the rights of land-owners to com-
pensation from a railroad company is that it conclusively shows the legislative
intent as to the limited rights in the land originally taken, and the limited
compensation paid therefor.

I can see no reason why the act of 1887 should not be held constitutional
and valid, in so far as it requires the company in question to be organized un-
der the general act of 1884, instead of under a special act, as originally pro-
vided.    It has been suggested that the constitution of the state, adopted since
the passage of the act of 1867, precludes the enactment of a special statute for
that purpose, and that, unless the amendment could be legally made, no rail-
road could ever be constructed on the Southern boulevard.    But, outside of
this consideration, I think the power of repeal and amendment as to this part
of the act was ample.    So much of the amendment as concerns simply the
method of organization would have to be upheld, even if other provisions of
the act were pronounced unconstitutional.    The general act of 1884 may there-
fore be followed by the defendant, except where an observance of its mandates
or an assertion of its privileges conferred by it in usual cases would defeat or
trench upon the vested and substantial rights which plaintiffs still possess.

Plaintiffs' right to an injunction does not depend upon the constitutionality of
the act of 1887.    Even if the original act of 1867 were held entirely unrepealed
and in force to-day, the effect of its express language would be only to con-
serve plaintiffs' privilege "to claim and recover from such person or corpora-
tion the full value of all the land taken," etc.    These words would seem to ap-
ply to suits for damages.    In the present action plaintiffs come into equity,
and take the position that they are still the owners of certain valuable prop-
erty rights which the defendant intends to infringe upon and appropriate to
its own use, without due process of law or making just compensation.    Upon
principle, and upon the authority of many cases clearly in point, I think they
are entitled to the relief demanded, and that the complaint states a cause of
action.    It has been decided in some of said cases that, under facts such as
are here set forth, the plaintiffs are entitled to sue for a perpetual injunction,
although they may have a remedy at law.    *Craig* v. *Railroad Co., supra;
Bloomfield* v. *Calkins,* 62 N. Y. 386; *Cemetery* v. *Railroad Co., supra;
Murdock* v. *Railroad Co.,* 73 N. Y. 579; *Fanning* v. *Osborne,* 102 N. Y.
441, 7 N. E. Rep. 307; *Milhau* v. *Sharp,* 27 N. Y. 625.

It may not be amiss to remark in closing that I cannot agree with the
learned counsel for defendant in his suggestion that the law, as enunciated in
*Craig* v. *Railroad Co., supra,* has been rendered obsolete by the passage of

the general act in 1884; and ▲would further say that the assumption in the present case, that the easement for horse-railroad purposes is a "street use," and therefore distinguishable from the easement for a steam railroad, begs the whole question here involved. The very point to be established by defendant is that, under the general act for the organization of horse-car companies in the streets of cities, defendant has the legal right to lay its tracks and operate its road over the land in question. This defendant has failed to do, but plaintiffs, on the other hand, set up facts which, if true, show that said land is still simple highway which they own, subject only to the one easement for which their testator was compensated. The demurrer should be overruled, and plaintiffs are entitled to judgment thereon, with costs.