injury, he was able to earn only about $500 a year. Thus, the effect of this judgment is to award to the plaintiff an income during his life which is nearly double the amount he was able to earn, and still leave the principal unexpended; and this, too, although he is able to labor, and perhaps earn as much as before the injury. While recognizing the fact that this was a question for the jury, and that its verdict should not be disturbed unless there is reason to believe that the jury has been swayed or misled by improper influences, yet it seems to us so clear that this verdict was the result of such influences, instead of being the result of the calm and unprejudiced judgment of 12 intelligent and fair-minded jurors, that we feel it to be our duty to grant a new trial on the ground that the damages were excessive, unless the plaintiff will stipulate to reduce the amount of the verdict to the sum of $9,000, which, to us, seems a liberal award for the plaintiff's injuries. Several cases have been cited by the respondent's counsel where large verdicts have been sustained, but, as the facts in each case are unlike those before us, but little aid can be derived from an examination of them. In Coppins v. Railroad Co., 48 Hun, 292, affirmed 122 N. Y. 557, 25 N. E. 915, where the verdict was for $15,000, it was by this court reduced to $7,000; and the presiding justice, in delivering the opinion in that case, examined many of the cases cited by the respondent, and fully stated the principle of the authorities governing this question, so that a detailed examination of cases, or of the principles applicable to it, would seem to be unnecessary. These considerations lead us to the conclusion that the judgment and order should be reversed on the ground that the damages are excessive, unless the plaintiff will stipulate to reduce the verdict to the sum of $9,000.

Judgment and order reversed on the ground that the damages are excessive, and a new trial granted, on payment of the costs of the trial by the appellant, unless the plaintiff shall stipulate to reduce the verdict for damages to the sum of $9,000, in which event the verdict and judgment, as so modified, are affirmed, without costs to either party. All concur.

---

(77 Hun, 609.)

HYDE v. HOUSTON et al.

(Supreme Court, General Term, Fifth Department. March 27, 1894.)

FRAUDULENT CONVEYANCES—EVIDENCE.

Land conveyed to the daughter of a judgment debtor will not be subjected to the judgment on the ground that the transaction was a fraudulent scheme of the debtor to shield his property, where it appears that the daughter made a cash payment on the purchase with money given her by an aunt, and paid the residue of the purchase money in monthly installments of $25, which were furnished by the father for rent of the premises, and that $25 per month was the fair rental value.

Appeal from special term, Monroe county.

Action by Hampden Hyde, as executor of D. Cameron Hyde, deceased, against Charles G. Houston and Margaret S. Houston. The complaint was dismissed, and plaintiff appeals. Affirmed.

This action is founded upon a judgment (after exhausting remedy by execution) of the plaintiff's testator against the defendant Charles G. Houston; and its purpose is to charge certain premises, of which the defendant Margaret S. Houston has the legal title, with lien of the judgment, etc.   It appears that in March, 1870, the plaintiff's testator entered into a contract with the defendant Charles G. Houston to sell him certain premises in the city of Rochester for the sum of $1,800, payable by installments through the period of five years; that the vendee, having made some payments, was in default in November, 1871, when the vendor brought an action against him to foreclose the contract, sell the premises, and charge the defendant with the deficiency; that the premises were sold pursuant to decree in that action, to the said vendor, February 14, 1872, and the deficiency was $782.69; that pursuant to an order of the court made February, 1890, judgment for such deficiency was docketed as of February 15, 1872 (the time of filing the report of sale); that the plaintiff's testator died January 24, 1892; and that, in an action thereafter commenced by the plaintiff herein against the said Charles Houston upon such deficiency judgment, he, on November 10, 1892, recovered a judgment for $1,835.45, and, upon the return of execution thereon unsatisfied, this action was brought.   In March, 1885, by contract, Ellwanger & Barry agreed to sell to the defendant Margaret S. Houston the premises in question for $3,500, with interest, payable in installments; that is to say, $2 down, $175 on the first day of April following, and the balance in monthly payments of $25 each.   There was paid upon the contract, up to and including October 1, 1889, $2,053.21 of principal and interest; and on or about the 15th day of November, 1889, the vendors in the contract then gave to the said Margaret S. Houston a deed, and took her bond, with mortgage on the premises, to secure the payment of the balance of the purchase money, $2,700, in monthly payments of $25 each, and interest semiannually.   At the time of the trial there had been paid, of principal and interest, upon the bond and mortgage, upwards of $1,500.   The defendants answer separately.

The opinion of Mr. Justice BRADLEY, at special term, is as follows:

The defendant Margaret S. Houston is the daughter of the other defendant, and at the time the contract was made she was only a few months more than twenty-one (21) years of age.   She then had no property or estate of her own, and since that time her father and his family have resided upon the premises, and the defendant Margaret has also resided there.   It is alleged—and such is the contention on the part of the plaintiff—that a contract and a conveyance were taken in the name of Margaret as a cover, and in fraud of the creditors of the defendant Charles G. Houston, who, it is alleged, has paid the purchase money, or the most of that which was paid, upon the contract, and has since the conveyance been paid upon the bond and mortgage.   If that contention is supported, in the sense so charged, the plaintiff is entitled to relief.   The fact that the premises were so occupied, and that the defendant Margaret had no means in the outset, and was engaged in no service, away from home, to produce any income, while her father was receiving a salary for his services, would, without some further proof on the subject, seem to justify the inference that he was substantially the beneficiary of the purchase, and that the payments on the purchase money, and on the taxes, insurance, etc., were his, and had, by fraudulent diversion from his creditors, been put into the property, and, in relation to the title taken by the daughter, such payments constituted voluntary gifts to her, to the prejudice of his creditors.   This is the theory upon which the plaintiff has proceeded.

Upon the main proposition the question is one largely of credibility of the witnesses on the part of the defense, who were the defendants, and the wife and mother of them.   The defendants, before the commencement of this action, were examined in proceedings supplementary to the execution.   The facts, as are represented by their testimony on the trial of their action, are much more ample or extended than they are represented by their depositions taken upon the supplementary proceedings to have been there stated; and such a construction may be put upon their depositions as tends to show that

they did not then recollect some things to which they testified on the trial. Their evidence, and that of Mrs. Houston, tends to prove that a person called by them "Aunt Manda Green" induced Margaret to purchase the property, in the first instance, by promising to help her pay for it, and that she did advance to Margaret two hundred dollars ($200) with which to make the first payment, and let her have, altogether, for that purpose, and to pay taxes, five hundred dollars ($500); that the father rented the premises of the daughter at the monthly rental of twenty-five dollars ($25), which he paid her, and it was used to make payments; that the mother of Margaret, having received some money from the aunt's estate, furnished some to her daughter; and that the latter was employed by her father at the weekly price of three dollars ($3) for her service in the house. All of which, the evidence of those witnesses tends to prove, were the sources of the fund with which she made, or caused to be made, payments of the purchase money, etc., of the premises. In that manner the payments by her may be substantially accounted for. The rent at twenty-five dollars ($25) from April 1, 1885, to May 1, 1893 (the time the last payment upon the bond, eight years one month); the three dollars per week for her services during the same time; and the moneys which the evidence tends to prove were advanced to Margaret by the aunt, Manda Green,—made an amount more than sufficient to pay all that was paid on the contract and bond and mortgage, and for insurance, taxes, local assessments, and water rents, since Margaret took the contract, and entered into the possession of the premises. It may be assumed that Mr. Houston desired that the premises should be purchased by his daughter, and that she made the purchase (encouraged to do, as she may have been, by her aunt) with a view to a home for her parents, as well as for herself. Such inducement, for it does not necessarily characterize the transaction between herself and her father as fraudulent against his creditors, if the amount of rent he promised to pay her was not unreasonable; and, as to that, the only evidence upon the subject is that the rental of twenty-five dollars ($25) per month was reasonable in amount. It also appears, by evidence to that effect, that Margaret was induced to remain at home, and perform services in the house for her father, by his promise of compensation for doing so. In view of the evidence the conclusion is fairly justified that the payments before mentioned upon the property were made by Margaret, or with money to which she was entitled, and that the charge of fraud as against creditors, in that respect, is not supported.

There is, however, a further fact, upon which the plaintiff seems to rely in support of the claim that money of the defendant Charles Houston went into the property. This has relation to the sum of six hundred dollars ($600) which his wife, the mother of Margaret, let her have to make certain improvements on the premises, and which were used for that purpose. Their aunt, Manda Green, lived with them, in the house on the premises, and was taken care of there for some time prior and up to the time of her death. She left a will, by which she gave to Mrs. Houston a legacy of three hundred and fifty dollars ($350), a legacy to Mr. Houston of five hundred dollars ($500), and a legacy of fifty dollars ($50) to Margaret. Mr. Houston was executor of the will. Mrs. Houston made and presented a claim against the estate of the testatrix, amounting to six hundred dollars ($600), for services in taking care of her. The claim was awarded or allowed to her by the surrogate, against the estate, and was paid by the executor to her. The money, or the amount of it, Mrs. Houston let Margaret have the benefit of, for the purpose of building an addition to the house on the premises in question, and it was so used. It is urged by the plaintiff that the money belonged to Mr. Houston, and therefore the plaintiff should, at least to that extent, have relief by the way of charge upon the premises. If there was a liability from Mrs. Green for the services performed by the wife, the presumption, in an action brought by the husband to recover pay for them, would have been in support of recovery by him. Birkbeck v. Ackroyd, 74 N. Y. 356. And an agreement of a husband to pay his wife for services performed in his household, or for him, is not effectual to support her claim for payment against him. Coleman v. Burr, 93 N. Y. 17; Blaechinsha v. Mission & Home, 130 N. Y. 497, 29 N. E. 755. But circumstances might have existed which would have supported the claim of Mrs. Houston for the services performed by her for Miss

Green. Reynolds v. Robinson, 64 N. Y. 593; Burby v. Barnhard, 9 N. Y. St. Rep. 587; Stamp v. Franklin (Sup.) 12 N. Y. Supp. 391, and cases before cited. The money allowed was paid to Mrs. Houston upon her claim of liability to her from the testatrix, at the time of the death of the latter, for services performed by the claimant for her. It will not nor cannot be assumed, in the absence of Mrs. Houston as a party to the action, that the circumstances which would entitle her to payment did not exist for its support. In an action by her or her husband to recover for the services, a different question would arise. Then to whom the liability was incurred would necessarily be the question for determination, and upon the disposition of it would depend the result. The asserted obligation to pay Mr. Houston for the services has been discharged by the allowance and payment to her, and, before denial of her right to the money she claimed and received on that account, she is entitled to the opportunity to be heard. It must, therefore, in the present case, be assumed that Mrs. Houston obtained the money from the estate of the testatrix upon a claim or right to it founded upon facts for its support, and that no relation, in respect to the money received from her mother by Margaret, arose between the latter and Mr. Houston. And inasmuch as it cannot, in the present case, be treated as a gift by him to her, the plaintiff can here found no claim upon its use in making improvements on her premises. The conclusion follows that the complaint should be dismissed.

Argued before DWIGHT, P. J., and LEWIS and HAIGHT, JJ.

John H. Hopkins, for appellant.

Shaurt & Sutherland, for respondents.

PER CURIAM. Judgment appealed from affirmed, with costs, on the opinion of BRADLEY, J., at special term.

---

(8 Misc. Rep. 619.)

DOWD v. SMITH.

(Supreme Court, Special Term, Cortland County. May 31, 1894.)

1. OFFER OF JUDGMENT—REQUIREMENTS—WRITING.
　　Under Code Civ. Proc. § 738, providing that "defendant may before trial serve * * * a written offer to allow judgment to be taken against him," and section 740, which provides that the offer must be subscribed by the party making it, or his attorney, an offer of judgment must be in writing.

2. COSTS—REFUSAL OF OFFER OF JUDGMENT.
　　An offer of judgment, though made before issue is joined, if accepted, bars any future litigation between the parties, arising out of the subject-matter of the transaction; and therefore an affirmative judgment for plaintiff for less than the amount of the offer is not rendered more favorable to the plaintiff than the offer by the fact that on the trial a counterclaim set up in the answer subsequently served, which, together with the amount of judgment, exceeded the amount of the offer, was liquidated.

Action by Mary A. Dowd against Dudley B. Smith on a contract of sale. Defendant moves for a new taxation of costs. Granted.

Wm. D. Tuttle, for plaintiff.

Irving H. Palmer, for defendant.

FORBES, J. This is a motion for a new taxation of costs. The defendant asks to strike out the plaintiff's costs, awarded to her upon a taxation by the clerk of Cortland county, and to insert in the judgment in this action costs in favor of the defendant. The