KATHERINE K. PECK et al., Respondents, *v.* SCHENECTADY RAILWAY COMPANY, Appellant.

1. RAILROADS — USE OF STREET BY ELECTRIC STREET RAILWAY CONSTITUTES AN ADDED BURDEN UPON PROPERTY RIGHTS. The use of a city street for the purposes of a street surface railroad operated by electric power imposes an added burden upon the property rights of the owners of the fee, subject to the public easement for street purposes.

2. APPEAL — INJUNCTION RESTRAINING CONSTRUCTION AND OPERATION OF ELECTRIC STREET RAILWAY — FORM OF, WITHIN DISCRETION OF TRIAL COURT AND WHEN AFFIRMED BY APPELLATE DIVISION NOT REVIEWABLE IN COURT OF APPEALS. It is within the discretion of the trial court to determine whether an injunction, restraining the threatened and intended construction of an electric street railway upon the surface of a street, the fee of which is held by the abutting landowner, shall be alternative, restraining the construction of such railway until the payment of ascer-

tained compensation as damages and denying a perpetual injunction, if such damages be paid, or whether such injunction shall be made perpetual in the first instance, leaving the railway company to its proceedings to condemn, if it has any legal right to such proceedings; and an order of the Special Term, granting a perpetual injunction in such case, affirmed by the Appellate Division, presents no question of law reviewable by the Court of Appeals, especially if there be a dispute or doubt as to the legal right of the railway company to acquire the title sought by condemnation proceedings.

3. Perpetual Injunction Restraining Building and Operation of Electric Street Railway May Be Modified by Court of Appeals. A judgment of the trial court granting a perpetual injunction restraining an electric street railway company from constructing and operating its railway upon such property, and affirmed by the Appellate Division, may, however, in a proper case, be modified by the Court of Appeals so that it shall not interfere with or restrain the railway company from instituting proceedings for condemnation of the property owner's rights, and if such rights shall be acquired and the compensation awarded paid, it will not be prevented from entering upon the premises for the purpose of building, maintaining and operating its railway thereon.

*Peck* v. *Schenectady Ry. Co.*, 67 App. Div. 359, affirmed.

(Argued January 31, 1902; decided April 1, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 4, 1902, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Marcus T. Hun, James A. Van Voast, Learned Hand* and *James O. Carr* for appellant. The use of a city street for the purposes of a street surface railroad does not impose an added burden upon the property rights of the owners of the fee of the street. (*People* v. *Kerr,* 27 N. Y. 188.) Street surface railroads, as distinguished from ordinary steam railroads, are proper street uses within the scope of the purposes for which streets are taken and to which they may be appropriated. (Booth on Street Railways, §§ 82, 83; Keasby on El. Wires [2d ed.], 178, § 145; Cooley's Const. Lim. [6th ed.] 683; Joyce on El. Law, § 341; 2 Dillon on Mun. Corp. 868, § 722; 1 Lewis on Em. Dom. [2d ed.] 261, §§ 115, 124;

Elliott on Roads & Streets [2d ed.], 754, 756, §§ 698, 699; *Barney* v. *Keokuk*, 94 U. S. 324; *Briggs* v. *H. R. R. Co.*, 79 Me. 363; *Taylor* v. *P. K. & Y. S. Ry. Co.*, 91 Me. 193; *Atty.-Gen.* v. *Met. R. R. Co.*, 125 Mass. 515; *Howe* v. *W. E. S. Ry. Co.*, 167 Mass. 46; *Elliott* v. *F. & W. R. R. Co.*, 32 Conn. 579; *Taggart* v. *N. S. Ry. Co.*, 16 R. I. 668; *Hinchman* v. *P. H. R. R. Co.*, 17 N. J. Eq. 75; *Lockhart* v. *C. S. Ry. Co.*, 139 Penn. St. 419; *P. W. & B. R. R. Co.* v. *W. C. S. Ry. Co.*, 38 Atl. Rep. 1067; *Poole* v. *F. R. Ry. Co.*, 88 Md. 533.) A street surface railroad is not an added burden, but is, in fact, a benefit to the abutting owner — increasing the value of his property and conveniencing himself. (*B. C. & J. R. R. Co.* v. *B. C. R. R. Co.*, 33 Barb. 420; *B. C.*, etc., *R. R. Co.* v. *C. I.*, etc., *R. R. Co.*, 35 Barb. 364; *Matter of D. C. Assn.*, 66 N. Y. 569; *Matter of N. F. & W. R. Co.*, 108 N. Y. 375; *Matter of Tuthill*, 36 App. Div. 492.) Even assuming that the proposed construction and operation of the defendant's street railway would be an additional burden upon the plaintiffs' land, the only relief to which they are entitled is compensation for the damage which they may sustain. (*Fries* v. *N. Y. & H. R. R. Co.*, 169 N. Y. 270; *Story* v. *El. R. Co.*, 90 N. Y. 122; *Williams* v. *N. Y. C. R. R. Co.*, 10 N. Y. 97; *A. K. Co.* v. *Dean*, 162 N. Y. 274; *Matter of N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 116; *Rogers* v. *O'Brien*, 153 N. Y. 357; *Osborne* v. *M. P. Ry. Co.*, 147 U. S. 248; *T. & B. R. R. Co.* v. *B., H. T. & W. Ry. Co.*, 86 N. Y. 107; *Clark* v. *M. G. T. Co.*, 10 App. Div. 354; *Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423.) A street surface railroad has the right to condemn a right of way in a city street. (*Matter of R. El. Ry. Co.*, 123 N. Y. 351; *B. R. R. Co.* v. *E. R. R. Co.*, 72 Hun, 583; *Clark* v. *M. G. T. Co.*, 10 App. Div. 354.)

*William F. Sheehan, Charles A. Collin* and *John L. Wells* for various street surface railroad corporations, intervening. Ever since the incorporation of street surface rail-

road corporations has been authorized by general law in this state, such corporations have been and still are entitled to acquire, either by purchase or by condemnation, all property, whether in the streets or elsewhere, which would be necessary to enable them to construct, maintain and operate the street surface railroads authorized by their charters, or which would be required by them for the purpose of their incorporation. (*Vail* v. *B. R. R. Co.*, 147 N. Y. 377; *Ingersoll* v. *N. E. R. R. Co.*, 157 N. Y. 459; *Roddy* v. *B., etc., R. R. Co.*, 32 App. Div. 311; *B., etc., R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 72 Hun, 586; *Matter of R. El. R. R. Co.*, 123 N. Y. 351; *Matter of S. B. R. R. Co.*, 119 N. Y. 141; *Matter of S. B. Ry. Co.*, 53 Hun, 131.)

*Edward Winslow Paige* for respondents. The plaintiffs own the street to its center. (*Dunham* v. *Williams*, 37 N. Y. 251; *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122.) A trolley electric road, with poles and wires, is not a street. (*Craig* v. *R. C. & B. R. R. Co.*, 39 N. Y. 404; *B., etc., G. Co.* v. *Calkins*, 62 N. Y. 386; *Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505; *Kellinger* v. *F. S. S. & G. S. F. R. R. Co.*, 50 N. Y. 206; *Reining* v. *N. Y., L. & W. R. Co.*, 128 N. Y. 157; *Eels* v. *A. T. & T. Co.*, 143 N. Y. 133; *Hersee* v. *City of Buffalo*, 1 Sheld. 446; *Prime* v. *T. T. S. R. R. Co.*, 1 Abb. [N. C.] 63.) Damage has nothing to do with the matter. (*A. K. Co.* v. *Dean*, 162 N. Y. 278; *Duke of Somerset* v. *Cookson*, 3 P. Wms. 390; *Fells* v. *Read*, 3 Ves. 70; *Lloyd* v. *Loaring*, 6 Ves. 773; *Lady Arundell* v. *Phipps*, 10 Ves. 139; *Nutbrown* v. *Thornton*, 10 Ves. 159; *Lowther* v. *Lowther*, 13 Ves. 95; *Osborn* v. *Bank of U. S.*, 9 Wheat. 738; *Brigham* v. *H. L. Ins. Co.*, 131 Mass. 319.) The injunction was properly granted. (*Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423; *People* v. *Law*, 34 Barb. 507.)

MARTIN, J. The purpose of this action was to enjoin the defendant from building an electric railroad upon Washing-

ton avenue in the city of Schenectady, N. Y., in front of the plaintiffs' premises and upon land of which they were the owners subject to a public easement for street purposes.

That the plaintiffs were the owners in fee of the portion of Washington avenue described in the complaint, and that the defendant, without the consent and obviously against the protest of the plaintiffs, threatened and intended to construct and operate an electric railroad upon tracks laid upon the surface of that street and to supply power therefor by the erection of poles and wires to conduct the electricity necessary for the operation of its road from its powerhouse to and along such street was in effect found by the trial judge and unanimously affirmed by the Appellate Division. Therefore, in determining this appeal, those facts must be regarded as conclusively established.

The primary and the most important question involved upon this appeal is whether the use of a city street for the purposes of a street surface railroad operated by electric power, imposes an added burden upon the property rights of the owners of the fee subject to the public easement for street purposes. If this were an open question in this state, much could be said to sustain the contention of the appellant that the acquisition of the use, from the owner, of the land for a public street, includes the right to apply it to all the beneficial public uses for which it may be adapted, not only at the time of its acquisition, but such as may arise in future. It is strenuously claimed that an electric surface street railroad in a city, as constructed and operated at the present time, in its use by, and by reason of its necessity to, the people of the municipality, constitutes an essential feature not only of public use but of street use, and that such means of transportation have largely superseded the former use of streets, and are now the methods by which a great portion of the people are transported, and, hence, as the street was originally established for the accommodation of the traveling public the change in methods of transportation does not constitute a new servitude but only a new and necessary method of accomplishing the

purpose for which the street was originally intended, and does not entitle the owners of the fee to additional compensation. This contention is not without force and there are not a few authorities in other jurisdictions which sustain it.

In this state, however, the clear weight of authority is adverse to that contention. *Craig* v. *Rochester City & Brighton R. R. Co.* (39 N. Y. 404) is an important and leading case upon the subject. The plaintiff in that action was the owner of a lot on East avenue in the city of Rochester extending to the center of the street. The defendant asserted the right to construct a horse railroad therein without obtaining the plaintiff's consent or instituting proceedings to acquire the right to construct it across his premises. The trial court granted a perpetual injunction restraining the railroad company from building its road over the portion of the street of which the plaintiff owned the fee. The defendant appealed from the decision of the trial court to the General Term, where the judgment was affirmed, and then appealed to the Court of Appeals, where the decisions below were also sustained. There, as here, it was claimed that the defendant possessed the right to construct its railroad through the streets of a city, by virtue of the consent of the common council, without making compensation for damages to the owners of lots along the street over which the railroad passed. It was there urged that the building of such a road was not an infringement upon the rights, or any injury to the interests, of the owner in fee of the land in the street, as it was only a mode of exercising the public right of passage with which he had parted, and not such an additional or further appropriation as entitled him to pecuniary remuneration. This court decided adversely to that claim, and held that establishing and running a horse railroad in a public street of a city was an imposition of an additional burden upon the land of an adjoining proprietor covered by such street, and that the latter could maintain a suit to perpetually enjoin the railroad company from laying down its track and from running its

cars over the street. The same doctrine as to running steam cars upon a street or highway had been previously held in several cases (*Trustees Presb. Soc'y in Waterloo* v. *Auburn & Rochester R. R. Co.*, 3 Hill, 567; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97; *Davis* v. *Mayor, etc., of N. Y.*, 14 N. Y. 506; *Mahon* v. *N. Y. C. R. R. Co.*, 24 N. Y. 658; *Carpenter* v. *Oswego and Syracuse R. R. Co.*, 24 N. Y. 655; *Wager* v. *Troy Union R. R. Co.*, 25 N. Y. 526), a doctrine which has since been so firmly established that it is not even controverted by the defendant. (*Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98, 107; *McGean* v. *Met. E. R. Co.*, 133 N. Y. 9, 15; *Coatsworth* v. *Lehigh Valley R. R. Co.*, 156 N. Y. 451, 457.)

In the *Craig* case the appellant insisted that there was a distinction between a railroad operated in the streets of a populous city by steam and one operated by horse power, and that the rule laid down in the former cases was inapplicable to the latter class of roads. This court, after examining the question, while conceding that there was a difference between a steam road and a horse railway, in the manner in which the road was constructed and the speed with which the cars were propelled, said: "But there is precisely the same exclusive appropriation of the track for the purposes intended in each case, to the absolute exclusion of all who may interfere with its mode of operation," and distinctly held that the building and operation of a horse railroad in the public streets of a city imposed an additional burden upon the land of an adjoining proprietor covered by a street, and that such a proprietor could maintain a suit to perpetually enjoin a horse railroad company from laying down its track in the street and from running its cars over it. While the appellant contends that the *Craig* case does not decide that the construction of a street surface railroad operated by horse power entitles the owner of the fee of the street to compensation or to the relief awarded in the case at bar, we think otherwise. Since the decision in the *Craig* case, it has been regarded as an author-

ity holding that doctrine, and has been followed with great unanimity by our courts.

In *Bloomfield & R. Natural Gas Light Co.* v. *Calkins* (62 N. Y. 386, 388) the question of the right of an owner of the fee of land in streets was again quite fully discussed, and it was there said : " The introduction of railroads in this state presented the question whether a railroad corporation could use a public highway for the purpose of constructing and running its road, and it was held that it imposed an additional burden upon the soil of the highway besides what was included in the public easement ; that the legislature had not the power to make such imposition within the meaning of the constitutional provision, which forbids the taking of property of the owner of the fee without compensation ; and that the company can derive no title by any act of the legislature, or of any municipal authority, without the consent of the owner of the fee, or without the appraisal and payment of damages in the mode prescribed by law. (*Fletcher* v. *Auburn and S. R. R. Co.*, 25 Wend. 463; *Trustees of Presbyterian Society in Waterloo* v. *Auburn and Roch. R. R. Co.*, 3 Hill, 567; *Davis* v. *Mayor, etc., of N. Y.*, 14 N. Y. 506; *Williams* v. *N. Y. C. R. R. Co.*, 16 id. 97 ; *Wager* v. *Troy Union R. R. Co.*, 25 id. 526.) These cases settle the law, beyond peradventure, as to the right of railroad corporations to appropriate public highways to their benefit without compensation. At a later day an attempted distinction was sought to be made in favor of horse railroads in cities, and the question as to the right of these corporations to use the streets of cities for their roads and cars was presented in *Craig* v. *Rochester City and Brighton Railroad Co.* (39 N. Y. 404) and it was there decided, after full consideration by the Court of Appeals, that the running and establishing of such a road, in the public streets of a city, was an imposition of an additional burden on the land of the adjoining proprietor, for which compensation must be made." In *Fobes* v. *R., W. & O. R. R. Co.* (121 N. Y. 505, 515) this general question was discussed by Judge PECKHAM, who said that, under the decisions of the courts of this state, " To construct even a
20

horse railroad in a city street, is to place a new and˙additional burden upon the land, the right to do which does not exist by reason of the general right of passage through the street, but if the adjoining owner of land is not the owner of the fee in the street, and the railroad company has obtained the proper authority, he has no right to compensation for such added burden, nor to complain of such use so long as it is not exclusive or excessive. The same reasoning applies as we have seen in the case of a steam surface railroad. Such a use of the streets would be an additional burden upon the land, and of course, if the adjoining owner had title in fee to the center of the street, subject only to the public easement, he would have a right of action, as held by the *Williams* and other cases." . The doctrine of the *Craig* case was again recognized by this court in *Reining* v. *N. Y., L. & W. Ry. Co.* (128 N. Y. 157, 163) where Judge ANDREWS upon reviewing the ˙cases said : " These latter cases, as will be observed, decide that neither a horse nor steam railroad can be authorized in streets, the fee of which is in the adjacent owner, without his consent, while ˙the former cases hold that where the fee is in the municipality, horse railroads may be authorized against the will of the abutting owner and without making compensation. The distinction is made to rest on the location of the fee." In *Eels* v. *Am. T. & T. Co.* (143 N. Y. 133), this court held that the state can neither appropriate to its own exclusive use, nor can it authorize a corporation to so appropriate, any portion of a rural public highway, by setting poles therein for the purpose of supporting telegraph or telephone wires, and in that case the authority of the *Craig* case was again recognized and its principle applied. *Palmer* v. *Larchmont Electric Co.* (158 N. Y. 231, 235) also recognizes the principle that the general purposes of a highway or street do not include the transportation of persons or property by railroads over them. The *Craig* case has also been followed in *Thayer* v. *Rochester City, etc., R. R. Co.* (15 Abb. N. C. 52) ; *Matter of Gilbert El. R'way Co.* (38 Hun, 438, 447) ; *Spofford* v. *Southern Boulevard R. R. Co.* (15 Daly, 162, 165) ; *Eldridge*

v. *R.*, *C. & B. R. R. Co.* (54 Hun, 194, 195); *Matter of Rochester Electric R'way Co.* (57 Hun, 56, 60); *Matter of The Terrace* (39 N. Y. S. R. 270, 272); *McCruden* v. *Rochester R'way Co.* (5 Misc. Rep. 59, 61, 62; affirmed, 77 Hun, 609; 151 N. Y. 623); *Clark* v. *Middletown-Goshen Traction Co.* (10 App. Div. 354; followed, 16 App. Div. 631); *Mangam* v. *Village of Sing Sing* (11 App. Div. 212, 216); *Syracuse Solar Salt Co.* v. *R., W. & O. R. R. Co.* (67 Hun, 153, 161).

The doctrine of the *Craig* case has now become a rule of property which this court cannot in justice overthrow. Although that case was decided by a divided court, yet it is obvious that the principle there stated has since been generally if not universally recognized as the law of this state and been followed with great uniformity by its courts, as will be seen by reference to the cases to which we have already referred. Therefore, notwithstanding the fact that many jurisdictions have held a contrary doctrine, still, a principle which has been so thoroughly engrafted upon the law of our own jurisprudence should not be lightly disregarded. We are of the opinion that the contention of the appellant in this respect cannot and ought not to be upheld. The doctrine that a horse railroad invades the property rights of the owner of the fee in a public street and imposes upon him a burden for which he is entitled to compensation, being firmly established, it obviously follows that the building and operation of an electric road must be controlled by the same principle. Assuming, as we must, in view of these authorities, that the defendant's entry upon the plaintiffs' property in the street would constitute a trespass upon their property rights, it follows that the judgment appealed from must be affirmed.

The defendant, however, insists that if the proposed construction and operation of its railway would be an additional burden upon the plaintiffs' land, yet the only relief to which they are entitled is compensation for the damages which they may thereby sustain, and, therefore, as they have invoked the equitable powers of the court, it should compel them to

accept just compensation as an alternative to the injunction. We think this court has no power to deal with that question. If it be conceded that the defendant has the right to exercise the power of eminent domain and to condemn the plaintiffs' interest in the street by proceedings instituted for that purpose, and also that the trial court or Appellate Division had authority to render such alternative relief, still, as the power or discretion existed in the trial court to award the latter or relegate the defendant to the former, whichever it should deem more proper, its adoption of the former by omitting to render the alternative relief now sought, presents no question of law which this court can review. Although the courts of this state have often in cases somewhat similar awarded the defendant the alternative relief of paying an ascertained compensation as damages and denying a perpetual injunction if such damages were paid, when it was clear that the right of condemnation existed in the defendant, still we think the question whether a court of original jurisdiction shall award to a defendant such alternative relief or leave it to its proceedings to condemn, is one resting in the sound discretion of the trial court, a discretion which may be reviewed by the Appellate Division but which presents no question of law reviewable by this court, especially if there be a dispute or doubt as to the legal right of the defendant to acquire the title sought by condemnation proceedings. (*Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423; *Pappenheim* v. *Met. E. R. Co.*, 128 N. Y. 436.) If the defendant had no legal right to acquire the property of the plaintiffs, a court of equity would not be required to grant to the defendant a right to which it was not legally entitled. If such is the case, obviously it cannot be held that the court below committed a legal error in not requiring the plaintiffs to transfer their property to the defendant to which it had no legal right, and to which it could legally acquire no title by condemnation. Under the circumstances, we think the trial court was justified, in the exercise of a sound discretion, in leaving the parties to pursue such legal remedies as were necessary to enforce their respective

rights, and was not required to decide in this action any disputed question as to the defendant's right of condemnation.

The judgment which was entered upon the decision of the trial court and affirmed by the Appellate Division provided that " The defendant, its agents and servants be, and they are, perpetually enjoined from operating a railroad upon any of the said part of Washington avenue, and from doing any act tending thereto and thereabout, and from suffering any such act to be done in its or their name or behalf." It was evidently claimed at the Appellate Division that the provisions of this injunction were too broad and would, in effect, restrain the defendant from an entry upon the plaintiffs' land, even after a right to do so was acquired by condemnation. That court was satisfied that the judgment would have no such effect, and that if so it might be amended by application to that court. While we are disposed to think that the judgment would not have the effect claimed, still, it may well be modified by providing that it shall not interfere with or restrain the defendant from instituting proceedings for condemnation of the plaintiffs' rights, and that when the rights of the plaintiffs shall be thus acquired and the compensation awarded paid, it shall not be effective to restrain the defendant from entering upon such premises for the purposes for which they were condemned.

The judgment should be modified by adding thereto a provision that if the defendant shall acquire a right to the use of the land in question for street railway purposes the judgment shall not be regarded as effective to restrain it from entering upon such premises for the purpose of building, maintaining and operating its railroad thereon, and as so modified the judgment must be affirmed, with one bill of costs to the plaintiffs.

PARKER, Ch. J. (dissenting). I do not disagree with my associates as to the scope of the decision in *Craig* v. *Roch. & C. B. R. R. Co.* (39 N. Y. 404), nor do they disagree with my contention that that decision was a mistake. If the question

were now presented to this court for the first time it would undoubtedly hold that the operation of a street surface railroad for the accommodation of passengers is a proper use, against which the owner of the fee to the center of the street has no legal ground of complaint, thus putting this court in line with the courts of other states in this country. But as the question comes now before us directly for the second time, the view of the majority is that in obedience to the doctrine of *stare decisis* we must follow the first decision although we do not agree with it. That position furnishes a greater measure of respect for precedent than I am willing to accord where the effect of it must be to injure in a great degree the public interest which lies in the direction of speedy and cheap short distance transportation. In such a situation the court should, in my judgment, first frankly admit the error of the former decision and next proceed to place the law on the subject on a sound basis. And especially should this be done where, as in this case, no substantial injury will result to the abutting property owners along the line of the existing street surface railroads, as sufficiently appears by the fact that out of the thousands of miles of such railroads in this state, the present is the first case where the claims of an abutting owner either for compensation or injunction has found its way into this court, and the instances are very few where the abutting owner has claimed, let alone received, compensation for alleged injury to his fee in the street. Tested by the experience of the past, therefore, no substantial injury will result to the abutting owner in the future by the decision I propose, while a contrary decision will be availed of to delay the construction of street surface railroads and compel them to acquire a right, which is practically of no value, by expensive condemnation proceedings, the taking of which will, in addition, consume much time. In the practical working out, therefore, it will result that corporations which can afford it will, in order to save time and legal expenses, pay a substantial price for that which is worth practically nothing. And it will likely also result that corporations which cannot afford it will not

undertake to build. Thus, the development of the street surface railroad system of the state, which so greatly conveniences the public, will be retarded, if not prevented to some extent, notwithstanding the fact that the general purpose of such streets was from the beginning, and still is, for the accommodation of all the public who desire to pass over them, and not solely for that limited portion of the public who prefer to employ their own conveyances.

That it is the law in nearly all other jurisdictions that the building and operation of a street surface railroad upon an existing street of a city for the accommodation of local travel does not impose an added servitude upon the lands abutting upon the street, for which the owners of the fee are entitled to compensation, is supported by the following authorities: *Barney* v. *Keokuk* (94 U. S. 324); *Taylor* v. *P. K. & Y. Street Railway* (91 Me. 193); *Attorney-General* v. *Metropolitan R. R. Co.* (125 Mass. 515); *Howe* v. *West End Street Ry. Co.* (167 Mass. 46); *Elliott* v. *Fair Haven and Westville R. R. Co.* (32 Conn. 579); *Canastota Knife Co.* v. *Newington Tramway Co.* (69 Conn. 146); *Taggart* v. *Newport Street Ry. Co.* (16 R. I. 668); *Hinchman* v. *Paterson Horse R. R. Co.* (17 N. J. Eq. 75); *Halsey* v. *Rapid Transit Street Ry. Co.* (47 N. J. Eq. 380); *Paterson Ry. Co.* v. *Grundy* (51 N. J. Eq. 213); *West Jersey R. R. Co.* v. *Camden, etc., Railway Co.* (52 N. J. Eq. 31); *Kennelly* v. *Jersey City* (57 N. J. L. 293); *Roebling* v. *Trenton Pass. Ry. Co.* (58 N. J. L. 666); *Lockhart* v. *C. S. Railway Co.* (139 Penn. St. 419); *Rafferty* v. *Central Traction Co.* (147 Penn. St. 579); *Philadelphia, Wilmington and Baltimore R. Co.* v. *Wilmington City Ry. Co.* (38 Atlantic Rep. 1067); *Poole* v. *Falls Road El. Ry. Co.* (88 Md. 533); *Green* v. *City & Suburban Ry. Co.* (78 Md. 294); *Koch* v. *North Av. Ry. Co.* (75 Md. 222); *Hodges* v. *B. U. Pass. Ry. Co.* (58 Md. 603); *Reid Bros.* v. *Norfolk City R. Co.* (94 Va. 117); *Richmond Traction Co.* v. *Murphy* (98 Va. 104); *Merrick* v. *I. R. R. Co.* (118 N. C. 1081); *Louisville Bagging Mfg. Co.* v. *Central Pass. Ry. Co.* (95 Ky. 50); *Smith*

v. *Street R. R.* (87 Tenn. 626); *Southern Ry. Co.* v. *Atlantic Ry. Co.* (111 Ga. 679); *Birmingham Ry. and El. Co.* v. *Birmingham Traction Co.* (122 Ala. 349).; *Randall* v. *Jacksonville Street R. R. Co.* (19 Fla. 409); *C. & S. G. A. St. Ry. Co.* v. *Vil. of Cumminsville* (14 Ohio St. 523); *Hobart* v. *Milwaukee City R. R. Co.* (27 Wis. 194); *La Crosse City Ry. Co.* v. *Higbee* (107 Wis. 389); *C., B. & Q. R. R. Co.* v. *W. C. Street R. R. Co.* (156 Ill. 255); *Gen. El. Ry. Co.* v. *C. & W. I. R. R. Co.* (184 Ill. 588); *Eichels* v. *Evansville Street Ry. Co.* (78 Ind. 261); *Chicago and Calumet Terminal Ry. Co.* v. *W. H. & E. C. S. Ry. Co.* (139 Ind. 297; 151 Ind. 577); *People ex rel. Kunze* v. *F. W. & E. Ry. Co.* (92 Mich. 522); *Dean* v. *A. A. S. Ry. Co.* (93 Mich. 330); *Nieman* v. *D. S. S. Ry. Co.* (103 Mich. 256); *Newell* v. *M. L. & M. Ry. Co.* (35 Minn. 112); *Elfelt* v. *Stillwater St. Ry. Co.* (53 Minn. 68); *Snyder* v. *F. M. St. Ry. Co.* (105 Iowa, 284); *Jaynes* v. *Omaha St. R. Co.* (53 Neb. 631); *Ransom* v. *Citizens' Ry. Co.* (104 Mo. 375); *Williams* v. *City El. St. Ry. Co.* (41 Fed. Rep. 556); *Brown* v. *Duplessis* (14 La. Ann. 842); *McQuaid* v. *Portland & V. Ry. Co.* (18 Oregon, 237); *Finch* v. *Riverside, etc., Ry. Co.* (87 Cal. 597).

How the text writers view the decisions of the courts of this country will appear from the following quotation from Lewis on Eminent Domain (2d ed. vol. 1, § 115, f.):

" It has been determined in numerous decisions and without dissent, except in the state of New York, that the use of a street by a horse railroad constructed and operated in an ordinary manner, falls within the purposes for which streets are established and maintained, and, consequently, that for any damages resulting from such use the abutting owner of property can recover no compensation whether the fee of the street is in him or in the public."

Other text writers are to the same effect. (2 Dillon on Municipal Corporations [4th ed.], § 722; Joyce on Electric Law, § 341; Cooley on Constitutional Limitations, [6th ed.], 683; Keasbey on Electric Wires [2d ed.], § 145; Booth on Street Railways, § 83.)

While it may be conceded that the isolation of our courts

upon this subject does not furnish sufficient grounds to justify the overthrow of a precedent of so long standing, and it may also be conceded that the interest of street surface railroad corporations do not require it, it cannot, it seems to me, be doubted that the interest of the public and its right to enjoy the benefit of modern improvements in the methods of street travel by which is insured to them a cheap, convenient and rapid means of transportation over the streets of cities and to adjacent villages and towns, do authorize a reconsideration of that decision and a re-examination of the questions which led to the making of it, for the purpose of ascertaining whether the principles upon which it was based were correct and should be continued, or are incorrect, and, therefore, require a practical reversal of that decision. In making such an examination, we would have a vast advantage over our predecessors, who are responsible for the decision in the *Craig* case, for the propelling of cars by electricity had not then been attempted, if it had been thought of, and no one imagined that the time would ever come when in our cities and villages street surface railroads would accommodate the great majority of the local traveling public, carrying them rapidly from one place to another, leaving the private conveyance to carry but an infinitesimal portion of that great public which daily and hourly traverse the streets of our rapidly growing cities. Had they been able to anticipate what we have witnessed, the arguments advanced to justify the holding that the rule of the *Williams Case* (16 N. Y. 97) — a steam railroad case and not a street case at all — was applicable to a street railroad operated for the convenience of those using the street, would not have been made. That wide distinction which in fact obtains between those two classes of cases should be by law maintained, especially when only the correction of a manifest error stands in the way.

I advise a reversal of the order.

Gray, O'Brien, Vann and Cullen, JJ., concur with Martin, J.; Werner, J., concurs with Parker, Ch. J.

Judgment accordingly.