Merrimack, ˄
Nov. 1, 1904. ˅

## STRICKFORD v. BOSTON & MAINE RAILROAD.

73    81
74    516

Under section 5, chapter 27, Laws 1895, a railway corporation has no right to occupy a public highway for the construction and operation of its road, without first procuring an assessment of the damages caused abutting owners and making payment or tender thereof; and a failure to comply with these prerequisites renders such occupancy unlawful, in the absence of a waiver by the abutters.

Where an abutting owner waives his right to a prepayment of damages, the occupation of the highway by the street railway is lawful as against him; and in the absence of a claim that the railway is constructed in an unsuitable and improper manner, he cannot maintain an action at law against the corporation for damages, but may apply to the selectmen of the town in which the property is situate, and have the damages to which he is entitled under the statute assessed.

CASE, for damages occasioned the plaintiff by the defendants' construction and operation of a street railway upon and over a highway in front of his property. The writ is dated September 21, 1903. The questions of law arising upon the defendants' demurrer were transferred from the April term, 1904, of the superior court by *Peaslee* J.

The declaration alleges, in substance, that at the time of the acts complained of the plaintiff was and now is the owner of a certain lot of land in the town of Hooksett, bounded on its easterly side by a public highway; that a three-story building, the east line of which is upon the west line of the highway, occupies nearly the entire frontage of the lot, with entrances upon the highway which must so remain, as there is no room at either end of the lot for a passway by the building; that the ground floor of the building is fitted up for commercial purposes, and the upper stories for tenements, and were so used and occupied down to the time of the acts complained of; that as an abutter upon the highway the plaintiff owns, and down to the time of the construction of the defendants' railway used and enjoyed, a private right of access to his lot and building from the highway; that in June, 1902, the defendants, in disregard of the plaintiff's right, constructed the tracks of their Manchester & Concord street railway in the highway, parallel to and within seven and one half feet of his building, and have since so maintained and operated the same; and that as a result of their conduct his right of access has been seized and almost entirely destroyed, and he has been unable to rent or use his building for the purposes for which it is designed.

It was agreed that the following facts might be considered as alleged in the declaration: April 6, 1901, the defendants petitioned the selectmen of Hooksett for a location of their railway upon the highway. They did not request the selectmen to assess the damages that might be occasioned the plaintiff's property thereby. Notice of a hearing upon the petition was duly given, and the plaintiff did not appear and object, although he knew of it. The selectmen granted the location for the railway on May 17, 1901, but did not consider whether the plaintiff's property was damaged or not. The defendants constructed the railway according to the lay-out granted, but have never caused the plaintiff's damages to be assessed, paid, or tendered. The plaintiff knew of the construction of the railway as it progressed, and made no objection.

*Almon F. Burbank*, for the plaintiff.

*John M. Mitchell*, for the defendants.

BINGHAM, J. The defendants contend in support of their demurrer that the railway is lawfully located within the limits of the highway, and that although the plaintiff owns the fee to the center of the highway opposite his lot, the construction of the railway upon it was not the imposition of an additional burden,—the taking of a new easement,—and that the plaintiff is not entitled to damages. The plaintiff, on the other hand, contends that the railway is not lawfully in the highway; that although its location was properly granted, the defendants had no right under the law to appropriate and use the highway for railway purposes without first causing his damages as an abutter to be assessed and paid or tendered to him; and that because of their failure in this regard he is entitled in this action, or by some appropriate procedure, to have his damages ascertained and paid.

In 1895 the legislature enacted a general street railway law (Laws 1895, *c.* 27), in which it provided (*s.* 1) that " street railway companies shall have the powers and privileges, and be subject to the duties, liabilities, restrictions, and provisions, contained in this chapter." The defendants' street railway was constructed under the provisions of this act. It is therefore necessary to ascertain what steps the law required the defendants to take to lawfully occupy the highway with their railway. In section 5 of the railway law it is provided that " all parts of street railways occupying any portion of a public highway or street shall be located thereon by the mayor and aldermen of cities or selectmen of towns in which said portions of said highways or streets may be. The board

of mayor and aldermen of a city or the selectmen of a town, . . . upon petition of the directors of such railway corporation for a location of its tracks on or over any public highway, . . . shall give notice by publication to all parties interested of the time and place at which they will consider such petition for location in the public highways of said town or city; and after a public hearing of all persons interested they may make an order granting the same, or any portion thereof, under such restrictions and upon such conditions as they may deem the interests of the public require; and the location thus granted shall be deemed to be the true location of the tracks of the railway. . . . The boards of mayor and aldermen of cities and selectmen of towns shall assess damages to abutters, subject to the right of appeal, in the same manner as now provided by law in the laying out of highways."

The highway law referred to in section 5 requires the selectmen in towns and the corresponding municipal authority in cities to assess the damages sustained by owners of land taken for highways, to insert them in their return laying out the way, and to cause their return to be recorded by the town clerk (P. S., c. 67, ss. 17, 18), and further provides that "no land . . . taken for a highway shall be appropriated or used for making the same until the damages assessed therefor are paid or tendered," except in certain cases not necessary to be here mentioned. P. S., c. 71, s. 4.

It is apparent that section 5, read in the light of the above provisions of the highway law, requires that a railway corporation, in applying for a location in a highway, should procure an assessment of the damages caused abutting owners; that an assessment and payment or tender of the damages are conditions precedent to its right to occupy the highway for the construction and operation of its railway; and that a failure to comply with these prerequisites, in the absence of a waiver by the abutters, renders its occupancy of the highway unlawful. *Manchester & Keene R. R.* v. *Keene*, 62 N. H. 81, 121, 122; *Lyman's Bridge Co.* v. *Lebanon*, 59 N. H. 196; *Smart* v. *Railroad*, 20 N. H. 233; *Rossiter* v. *Russell*, 18 N. H. 73. But these requirements may be waived by the abutter, as they are for his benefit. *Manchester & Keene R. R.* v. *Keene*, *supra*, 121, 122; *Uncanoonuck Road Co.* v. *Orr*, 67 N. H. 541.

The plaintiff, as an abutter, had it in his power to prevent the appropriation and use of the highway by the defendants for railway purposes until his damages were assessed and paid or tendered, and it was his duty to insist on his legal rights if he intended to claim that the defendants' conduct was illegal. Instead of so doing, he stood by until long after the railway was constructed and put in operation, without objecting, and does not now

object to the defendants' occupancy of the highway, provided he can have the damages to which he may be entitled ascertained and paid to him.   The assessment and prepayment of the plaintiff's damages may therefore be properly considered as waived, and the defendants' occupancy of the highway in front of his premises as lawful.   Their occupancy being lawful, and there being no claim that the railway was not constructed in a suitable and proper manner, the present action cannot be maintained.   *Lebanon* v. *Olcott*, 1 N. H. 339;   *Troy* v. *Railroad*, 23 N. H. 83;   *Henniker* v. *Railroad*, 29 N. H. 146, 152;   *Boston Belting Co.* v. *Boston*, 149 Mass. 44;   *S. C.*, 152 Mass. 307.   This case differs from *Ash* v. *Cummings*, 50 N. H. 591, for there the plaintiff had not waived his right to an assessment and payment of damages before his land was flowed.

While the plaintiff's waiver of an assessment and prepayment of damages, and the defendants' construction of their railway in a suitable manner under legislative authority, preclude him from treating them as tort-feasors, it does not deprive him of the right to an assessment and payment of such damages as he may be entitled to under the statute.   *Manchester & Keene R. R.* v. *Keene, supra.* He can avail himself of this right by applying to the selectmen of Hooksett for an assessment.   The right to apply is not restricted to the railway corporation.   *Lebanon* v. *Olcott*, 1 N. H. 339, 340, 341, 342, 345.

Whether under the common law the railway would (*Craig* v. *Railroad*, 39 N. Y. 404;  *Peck* v. *Railway*, 170 N. Y. 298;  *Paige* v. *Railway*, 178 N. Y. 102) or would not (*Howe* v. *Railway*, 167 Mass. 46, and cases cited there and in 170 N. Y. 311, 312) be regarded as imposing an additional servitude upon the fee of the plaintiff in the highway, and if the latter, whether the legislature in enacting section 5, chapter 27, Laws 1895, intended that damages should be awarded an abutter on the same basis as though the railway were an additional servitude (*Baker* v. *Railway*, 183 Mass. 178), and, in general, what elements of damage may be considered in a proceeding under the statute, are questions that are immaterial to the decision of this case and are not considered.

*Demurrer sustained.*

All concurred.