FRED ADEE, Respondent, *v.* NASSAU ELECTRIC RAILROAD COMPANY and BROOKLYN HEIGHTS RAILROAD COMPANY, Appellants.

FLORENCE ADELE LOTT and JENNIE LOUISE BANKS, Respondents, *v.* NASSAU ELECTRIC RAILROAD COMPANY and BROOKLYN HEIGHTS RAILROAD COMPANY, Appellants.

*Street surface railroad companies — they may condemn easements in streets — limitation upon their power to acquire, in cities, private property outside of streets.*

The right of a street surface railroad corporation to institute condemnation proceedings is conferred by sections 4 and 7 of the Railroad Law (Laws of 1890, chap. 565, as amd. by Laws of 1892, chap. 676) which relate to all railroad corporations, and not by section 90 of that law, as amended by Laws of 1895, chapter 933.

Section 90 of the Railroad Law, which refers to street surface railroad corporations particularly, provides, "Every such corporation, before constructing any part of its road upon or through any private property described in its articles of association or certificate of incorporation * * * and before instituting any proceeding for the condemnation of any real property, shall make a map * * * of the route * * * and all provisions of section 6 of the act hereby amended, so far as applicable, shall apply to the route so located.

If any such street surface railroad company is unable to agree for the purchase of any such real property, or of any right or easement therein required for the purpose of its railroad, \* \* \* it shall have the right to acquire title thereto by condemnation in the manner and by the proceedings provided by the Condemnation Law. Nothing in this section shall be deemed to authorize a street railroad corporation to acquire real property within a city by condemnation." *Held*, that this section related to the condemnation by street railroad companies of private property located outside of the streets in which the railroad is to be operated, and the final sentence contained in such section does not prohibit a street surface railroad corporation desiring to construct its road upon a city street, the fee of which is in the abutting owners, from instituting condemnation proceedings to acquire the necessary easement.

APPEAL by the defendants, the Nassau Electric Railroad Company and another, from a judgment of the Supreme Court in each of the above-entitled actions in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 28th day of August, 1901, upon the decision of the court rendered after a trial at the Kings County Special Term.

*Augustus Van Wyck*, for the appellants.

*William J. Carr*, for the respondents.

GOODRICH, P. J.:

The plaintiffs are the owners of two lots on the southerly side of Union street, Brooklyn, together with the fee of the land lying in the street in front of their premises, to the center thereof. Union street is a public street of the city, but the city has only an easement therein, never having condemned the fee of the street. The defendants are about to construct a street surface electric railroad in Union street, and upon the land of the plaintiffs, without having taken condemnation proceedings to acquire the title of the plaintiffs or obtaining their consent or compensating them. The plaintiffs prayed for a permanent injunction. The court at Special Term rendered judgment for a permanent injunction, and the defendants appeal.

The Court of Appeals, in the recent case of *Peck* v. *Schenectady Railway Company* (170 N. Y. 298), following the case of *Craig* v. *Rochester City & Brighton R. R. Co.* (39 id. 404) and other cases, held that the establishing and running of such a road in the public streets of a city was an additional burden on the land of the adjoin-

ing proprietor, for which compensation must be made, and that this had become a rule of property which that court could not in justice withdraw ; that the question, whether a court of original jurisdiction should award to a defendant the alternative relief or leave it to its proceedings to condemn, is one resting in the sound discretion of the trial court, subject to review by the Appellate Division, but which presents no question of law reviewable by the Court of Appeals, especially if there is a dispute or doubt as to the legal right of the defendant to acquire the title by condemnation proceedings. The judgment under review in that case perpetually enjoined the defendant " from operating a railroad upon any of the said part of Washington Avenue, and from doing any act tending thereto and thereabout, and from suffering any such act to be done in its or their name or behalf." The Court of Appeals, while it did not think the injunction would have the effect of restraining the institution of condemnation proceedings, and did not pass upon the question whether condemnation proceedings would, or would not, lie, modified the judgment " by adding thereto a provision that if the defendant shall acquire a right to the use of the land in question for street railway purposes, the judgment shall not be regarded as effective to restrain it from entering upon such premises for the purpose of building, maintaining and operating its railroad thereon."

We should have no difficulty in following the judicial reticence of the Court of Appeals in the *Peck Case* (*supra*), except for the fact that the decision of the learned justice at Special Term contains the following : " The fee of Union street was never acquired by the public, but only an easement therein for the purposes of a city street. The construction and operation of a street surface railroad is not within such purposes, but imposes an additional burden upon the land. To this the plaintiff has not consented. Nor have the defendants the power, under the Railroad Law or Condemnation Law, to condemn the property so taken by such additional use. He is, therefore, entitled to an injunction against the attempted unlawful taking of his property. The former suit between the parties hereto did not involve or determine these questions. The plaintiff is not estopped here by the judgment there. I direct judgment to be entered accordingly in favor of the plaintiff for a permanent injunction, with costs to be taxed."

If the learned justice was right in his determination, as also expressed in his opinion, that the defendants as street railroad corporations have no power to institute condemnation proceedings against the plaintiffs' property, the judgment should be affirmed, with the same modification as was made in the *Peck* case; on the other hand, if he was in error in his construction of the Condemnation Law, we must modify or reverse the judgment appealed from. This brings us to a consideration of the question whether a street surface railroad in the borough of Brooklyn has power to acquire by condemnation the easement to construct and operate a surface railroad over one of the public streets in that borough, as against the owner of abutting land who also owns the fee of one-half of the street in front of his land.

The Constitution of 1894 (Art. 3, § 18) provides that the Legislature shall not pass a local or private bill granting to any corporation the right to lay down railroad tracks, but shall pass general laws providing therefor, but no law shall be passed which authorizes the construction or operation of a street railroad except upon the consent of the owners of one-half in value of the property bounded on, and the consent of the local authorities having control of that portion of the street upon which it is proposed to construct such railroad.

The power of the Legislature to authorize the construction of a street railroad upon the streets of a city is plenary except as thus limited by the Constitution. (*Adee* v. *Nassau Electric R. R. Co.*, 65 App. Div. 529; *Beekman* v. *Third Avenue R. R. Co.*, 153 N. Y. 144.) The Legislature, in the Railroad Law, has authorized the construction of street railroads upon the streets of any city provided the consent of one-half the owners of abutting property and the consent of the local authorities shall be secured. This right is, of course, subject to compensation to the owners of any land not taken for public streets.

Let us examine the present Railroad Law (Laws of 1890, chap. 565, as amd.). Article 1, section 2 (as amd. by Laws of 1892, chap. 676), provides that "Fifteen or more persons may become a corporation for the purpose of building, maintaining and operating a railroad, * * * by executing, acknowledging and filing a certificate in which shall be stated:" the name (Subd. 1), the kind of road to be built or operated (Subd. 3), "if a street surface

railroad the names and description of the streets, avenues and high-ways in which the road is to be constructed" (Subd. 11), "if it is to be a railway corporation specified in article five of this chapter (that is, a steam railroad), the statements required by that article to be inserted in the certificate of incorporation" (Subd. 12).

Two facts are apparent. The section relates to and authorizes the incorporation of both street and other railroad companies, but requires the statement of different matters in the certificates respectively; thus at the outset making a distinction between street railroads and steam railroads which, as we shall soon see, runs through the whole Railroad Law.

Section 4 (as amd. by Laws of 1892, chap. 676) declares that, "Subject to the limitations and requirements of this chapter, every railroad corporation, in addition to the powers given by the General and Stock Corporation Laws, shall have power * * *. 2. * * * to acquire by condemnation such real estate and property as may be necessary for such construction, maintenance and accommodation in the manner provided by law."

Section 7 (as amd. by Laws of 1892, chap. 676) provides that "all real property, required by any railroad corporation for the purpose of its incorporation, shall be deemed to be required for a public use. If the corporation is unable to agree for the purchase of any real property, or of any right, interest or easement therein, required for such purpose, or if the owner thereof shall be incapable of selling the same, * * * it shall have the right to acquire title thereto by condemnation."

If there were no further provision in the chapter, there could be no possible doubt that street railroad corporations in cities have equal power with steam railroad corporations to take proceedings to condemn property necessary for the authorized purpose of their incorporation, and the only question is whether there is anything in section 90 of the act inconsistent with sections 4 and 7. Article 4 is entitled "Street Surface Railroads." It is instructive to notice that although the article is thus headed there is no provision in it relative to the method of incorporating street railroads or as to their general powers, and this for the manifest reason that these matters had been provided for in the sections above alluded to.

Section 90 of article 4 (as amd. by Laws of 1895, chap. 933)

provides that, " The provisions of this article shall apply to every corporation   *   *   *   organized to construct or operate a street surface railroad,   *   *   *   upon and along any street, avenue, road, highway or private property, in any city,   *   *   * and every such corporation must comply with the provisions of this article.   *   *   *   Upon   *   *.   *   complying with the conditions set forth in section ninety-one of the Railroad Law, every such corporation shall have the power and privilege to construct, extend, operate and maintain such road, extensions or branches, upon and along the streets, avenues, roads, highways and private property named and described in its certificate of incorporation   *   *   *.   Every such corporation, before constructing any part of its road upon or through any private property described in its articles of association or certificate of incorporation   *   *   * and before instituting any proceeding for the condemnation of any real property, shall make a map   *   *   *   of the route   *   *   * and all provisions of section six of the act hereby amended, so far as applicable, shall apply to the route so located.   If any such street surface railroad company is unable to agree for the purchase of any such real property, or of any right or easement therein required for the purpose of its railroad,   *   *   *   it shall have the right to acquire title thereto by condemnation in the manner and by the proceedings provided by the Condemnation Law.   Nothing in this section shall be deemed to authorize a street railroad corporation to acquire real property within a city by condemnation."

The question is whether or not the final sentence applies to the acquirement by condemnation proceedings of an easement in the street over which it is proposed to construct and operate a railroad in a city.   The section had already conferred upon street railroad corporations the power to construct their roads along and upon streets and avenues, upon obtaining the consents required by section 91, that is, the consent of the owners of one-half in value of the property bounded on, and also the consent of the local authorities having the control of that portion of the street upon which it is proposed to build.   The section authorizes a corporation which has obtained such consents to construct its road on streets and also upon private property named and described in the certificate of incorporation, and this distinction between streets and private prop-

erty runs through the whole section. It also inferentially recognizes the right to proceedings for the condemnation of "any such real property," but adds the final proviso that "Nothing in this section shall be deemed to authorize a street railroad corporation to acquire real property within a city by condemnation."

The true meaning of this section seems to be that the prohibition does not relate to the acquisition of an easement in the street over which the road is to run, but does relate to other real property neces-. sary to its construction and operation. In other words, the section was enacted to enable street railroad corporations to take proceedings for the condemnation of private property which is not in but outside of the streets over which it is to run, in cases. where private property is necessary for the maintenance and operation of the road. The section has no relation whatever to the bed of a street or highway the control of which is in the local authorities. After granting the power to lay the road upon streets, the section contains a provision as to private property, viz., that before constructing the road upon or through private property, or instituting proceedings for the condemnation of real property, it shall observe certain formalities. This does not relate to the acquisition of an easement to run over land already dedicated to public use as a street.

The Statutory Construction Law (1 R. S. [9th ed.] 110, § 3) defines real property as including, among other things, hereditaments, corporeal and incorporeal. There can be no doubt that easements and ways are incorporeal hereditaments. (Gerard Titles Real Estate [4th ed.], 100.) The Railroad Law (§ 7) authorizes the condemnation of real property, and this necessarily includes the easement to construct and maintain the defendants' railroads over that part of the street opposite the plaintiffs' land.

Section 90 does not confer the power of condemnation upon street railroad corporations. It provides that before a street railroad corporation can institute such proceedings certain things must be done, and that if an agreement for purchase cannot be made with the owners, the road shall have the right to acquire title by condemnation in the manner and by the proceedings provided by the Condemnation Law. In other words, the provision relates not to the right of condemnation but to the methods in which condemnation proceedings shall be conducted when the right exists

and this view is in fact emphasized rather than contradicted by the final sentence, that nothing in the section authorizes a corporation to acquire real property within a city by condemnation. The right of condemnation is given by the 4th and 7th sections. It is to them alone and not to section 90 that we must resort, and, as already stated, these two sections confer upon every railroad corporation, whether street surface or steam railroad, the right to acquire real property by condemnation, and the Condemnation Law prescribes the method in which the proceedings must be taken.

If we take this view there is no difficulty in making the whole chapter harmonious. If we take a contrary view we make patchwork of the section and decide that its provisions are insufficient in certain cases to effectuate the purpose of the act, that they are incongruous and inconsistent, not only with this section but with the other sections of the Railroad Law.

In construing a statute, said the court in *Commonwealth* v. *Kimball* (24 Pick. 366, 370), " It is unquestionably a well settled rule of construction, applicable as well to penal statutes as to others, that when the words are not precise and clear such construction will be adopted as shall appear most reasonable and best suited to accomplish the objects of the statute ; and where any particular construction would lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the Legislature to avoid such conclusion." So, also, in *People ex rel. Twenty-third Street R. R. Co.* v. *Comrs. Taxes of N. Y.* (95 N. Y. 554, 559) it was said : " A construction of a statute which leads to an absurd consequence must always be avoided, as an absurd purpose is not to be attributed to the law makers." And it may also be remarked that such a construction would put it within the power of the owner of a single lot upon any street in Brooklyn to prevent the construction of any railroad by refusing to sell his property or grant permission for the construction of the railroad over his property. We cannot assent to any interpretation of the Railroad Law which forces this conclusion unless it is impossible to come to any other.

In *Matter of South Beach R. R. Co.* (119 N. Y. 141) section 13 of the General Railroad Act of 1850 (Chap. 140) was under consideration. The section read : " In case any company formed under this act

is unable to agree for the purchase of any real estate required for the purposes of its incorporation, it shall have the right to acquire title to the same in the manner and by the special proceedings prescribed in this act." And the act described proceedings substantially in the form of those now in use. The proceeding was taken to condemn a general route through private property. It was held that the certificate of organization authorized the building of a street railroad on public streets and not one through private property, and that the act did not authorize the condemnation of private property to be used as the main route of the railroad. The court said (p. 146): " Such are the prescribed and declared purposes of the incorporation, and the company, it may be conceded, might have the right to acquire by condemnation such and so much of private property as should be reasonably necessary to accomplish those purposes." In other words, the court recognized the power of a street railroad corporation to acquire private real estate by condemnation wherever such acquisition was of private real property incidental to the purposes of a street railroad.

*Matter of Rochester Electric R. Co.* (123 N. Y. 351) was a proceeding to appoint commissioners to appraise lands sought to be taken for railroad purposes. The railroad company was incorporated under chapter 252 of the Laws of 1884 providing for the construction of street railroads in cities, etc. The act provided for the incorporation of such roads and stated their powers, among them the powers and privileges granted by the act to authorize the formation of railroad companies (Laws of 1850, chap. 140). Section 13 of the latter act contained the provision that, if the company was unable to agree with owners for the purchase of " real estate required for the purposes of its incorporation, it shall have the right to acquire title to the same in the manner and by the special proceedings prescribed in this act." The special proceedings thus prescribed were analogous to the present proceeding for condemnation provided in the Code of Civil Procedure (Chap. 23, tit. 1, § 3357 *et seq.*). The court said (pp. 361–363): " Authority to acquire private property for its railroad purposes is conferred upon petitioner by the act of 1884, and the mode of its exercise is through the proceedings described in the General Railroad Act of 1850. The corporation, which is formed under the act of 1884, is given the powers and privileges granted

by that general act, and reference to its provisions shows in what manner and by what special proceedings real estate may be acquired when there is an inability to acquire it by agreement. * * * The act of ·1884 refers the company to the provisions of the general act of 1850 for purposes of acquiring private lands, and no reason in law exists why those provisions should not be as binding and the protection to the private citizen be as sacredly maintained in the case of a street railroad as in that of a steam railroad. The rule is a salutary one and should be respected for that reason as well as for its absoluteness under the statute." Here was clear recognition of the power of street railroads under the law as it· then existed to condemn lands necessary for the purposes of their incorporation.

I have no doubt that the general power of condemnation given by the General Railroad Act of 1850 and by the Street Railroad Act of 1884 was intended to be and is embodied, without distinction as to steam or street railroads, in the present Railroad Act. There is no reason why it should not have been given, and the present action is evidence of its necessity. The power of condemnation is just as requisite for street railroads as for steam railroads.

This will be still more apparent by reference to the course of legislation. The General Railroad Act of 1850 related to railroads using steam or animals or any mechanical power, and authorized the formation of corporations for such purposes; and while it is true that there was not at that early day any specific reference to street railroads in cities, possibly for the reason that they were comparatively infrequent, yet the language of the act is broad enough to include them. The act in express terms gave to all corporations thereunder the power of condemnation. In 1884, after many street surface roads had been incorporated under the act of 1850, the Legislature passed chapter 252 of the laws of that year, entitled "An act to provide for the construction, extension, maintenance and operation of street surface railroads and branches thereof in cities, towns and villages." It conferred (§ 1) upon corporations formed thereunder "all the powers and privileges granted" under the Railroad Law of 1850.

In 1889, the Legislature passed chapter 289, providing for the appointment of commissioners to prepare and report to the Legis-

lature bills for the consolidation and revision of the general statutes of the State, including among other subjects bills "Providing for the organization, government, and control of corporations except banks, banking and trust companies and municipal corporations." In pursuance of that act the commissioners reported to and the Legislature passed the present Railroad Law.

If we hold that the existing Railroad Law confers no power of condemnation upon street railroads we are compelled to say that, although there were statutes which conferred the power of condemnation alike upon street surface railroads and steam railroads, some of which acts had been in existence more than forty years, the Legislature, without any apparent reason, passed an act depriving one class of roads of the power requisite to complete operation, while leaving it in force as to the other, and this in an act which was designed to be simply a "consolidation and revision" of existing laws upon the subject. No reason appears for any such change in convenience, necessity or public policy of the State.

It cannot be too clearly pointed out and emphasized that the Railroad Law authorizes street railroad corporations to lay their tracks in a public street of the city upon compliance with the provisions respecting consents of abutting owners of one-half in value and the consent of the local authorities. The defendants have complied with the provisions of this limitation, as has been adjudged in the case of the present plaintiff. (*Adee* v. *Nassau Electric R. R. Co.*, 65 App. Div. 529.)

In *Matter of Nassau Electric R. R. Co.* (6 App. Div. 141; 167 N. Y. 37) it also appears that proceedings have been instituted under section 94 of the Railroad Law.

We thus reach the conclusion that the defendants have power under the Railroad Law to institute proceedings for the condemnation of so much of the plaintiffs' property as is taken by the additional use of the street in front of their premises, and for this reason that the judgment proceeds upon an erroneous view of the law and should be modified by inserting therein a provision substantially in the language of the *Peck* case, " that if the defendants shall acquire a right, by condemnation or otherwise, to the use of the land in question for street railroad purposes, the judgment shall not be regarded as effective to restrain them from entering upon

such premises for the purpose of building, maintaining and operating their railroad thereon," and as thus modified, the judgment is affirmed, without costs of this appeal.

All concurred.

JENKS, J. (concurring):

I concur with the presiding justice. I think that we should meet the question whether the defendants have the right of eminent domain. The learned justice at Special Term writes in his opinion that if he were satisfied that the defendants possessed such right, he would not hesitate to deny the injunction upon condition that condemnation proceedings should be commenced, but having concluded that the plaintiffs' rights cannot be taken *in invitum,* he is compelled to uphold the plaintiffs' contention and to enjoin interference with their property. That learned justice further writes that he discusses the question of the power of condemnation upon the suggestion that the injunction might be withheld upon the filing of a bond by the defendants to commence proceedings within a reasonable time, and that if he were satisfied that such proceedings would lie, he would make such disposition of the case. "But," he concludes, " I have no alternative."

Thus it conclusively appears that the disposition made by the court was not that which it would have made had it believed that the defendants were clothed with the power of eminent domain. We have, then, the announcement of a court of equity that it does not decree what it would, but only what it could. If we think that the court was hindered and hampered by a mistaking of the law, then we should say this, in order that the decree may be made as the court would have entered it but for its error of law.

Judgments modified in accordance with opinion of GOODRICH, P. J., and as modified affirmed, without costs of this appeal.