Judgment of conviction reversed and new trial ordered.

---

SCHENECTADY RAILWAY COMPANY, Respondent, *v.* KATHARINE K. PECK and Others, Appellants.

*Street surface railroads — right of, to obtain, by condemnation, a right of way on a street the fee of which is vested in the abutting owners.*

The clause of section 90 of the Railroad Law (Laws of 1890, chap. 565, as amd. by Laws of 1895, chap. 933), which provides, "Nothing in this section shall be deemed to authorize a street railroad corporation to acquire real property within a city by condemnation," was not designed to prevent a street surface railroad company from acquiring, in condemnation proceedings, the right to build its road upon a public street, the fee of which is vested in the abutting owners.

APPEAL by the defendants, Katharine K. Peck and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Schenectady on the 23d day of July, 1903, upon the decision of the court, rendered after a trial at the Fulton Special Term, adjudging the condemnation of certain real property described in the petition in the action to be necessary for the public use.

*Edward Winslow Paige*, for the appellants.

*Marcus T. Hun* and *James A. Van Voast*, for the respondent.

CHASE, J.:

In an action between the parties to this proceeding the appellants were adjudged the owners of the fee of that portion of Washington avenue in the city of Schenectady described in the petition herein, and the petitioner was enjoined from constructing a street railroad

thereon. (*Peck* v. *Schenectady R. Co.*, 67 App. Div. 359; 170 N. Y. 298.) In the Court of Appeals the judgment of the Special Term was modified by adding thereto "a provision that if the defendant shall acquire a right to the use of the land in question for street railway purposes the judgment shall not be regarded as effective to restrain it from entering upon such premises for the purpose of building, maintaining and operating its railroad thereon." In that case it is held that the use of a city street for the purposes of a street surface railroad operated by electric power imposes an added burden upon the property rights of the owners of the fee, subject to the public easement for street purposes, and an entry upon such street for the purposes of constructing and operating an electric street railroad thereon constitutes a trespass upon the property rights of such owner of the fee of the street.

Following said decision in the Court of Appeals the petitioner commenced a proceeding to condemn the property rights of the appellants in said lands. It is from a judgment in favor of the petitioner in such proceeding that this appeal is taken. It is conceded that the only question at issue is the question as to the power of the court to adjudge that condemnation be made of the premises described in the petition.

If it be true, as contended by the appellants, that street railroad corporations are prohibited from acquiring by condemnation the property rights of persons owning the fee of streets in cities, it necessarily follows that any one or more persons, owning the fee of any street in a city through the width thereof, even at a single point, may prevent the building of a street railroad upon such street, so long as the law remains unchanged. It is a well-known fact that the property rights of owners of the fee in streets in cities where railroads have been constructed and are being operated have not generally been condemned or purchased. If the appellants' contention is correct, non-assenting property owners could enjoin the operation of railroads over a street, the fee of any portion of which is owned by them, and if such injunctions were generally insisted upon it would result in effectually discontinuing the operation of very many existing roads.

No reason for withholding from the court a power so important and essential to contemplated and existing street railroads is appar-

ent.   The .construction contended for by the appellants would
ascribe to the Legislature an intention antagonistic to all legislation
on the subject of public rights of way, and be so opposed to the
policy and interest of the State that it should not be upheld unless
the intention of the Legislature is so plain that no other construction
can be given to its language.

The Legislature has authorized the building of street railroads
upon streets in cities upon obtaining the consent as in the statute
prescribed of a part of the abutting owners and the further consent
of the local authorities.   The Legislature also, in recognition of the
benefit to be derived by the public from the building and operation
of street railroads, has further provided that if the consent of prop-
erty owners as required by the statute cannot be obtained, the
court may appoint commissioners to determine 'whether such railroad
ought to be constructed and operated, and the determination of said
commissioners that such road ought to be constructed and operated,
when confirmed by the court, shall be taken in lieu of the consent
of the property owners as provided by the statute.   (See Railroad
Law [Laws of 1890, chap. 565], §§ 91, 94, as amd. by Laws of 1903,
chap. 537, and Laws of 1892, chap. 676, respectively.)

In view of these statutory provisions it is inconceivable that it
should at the same time withhold the power to condemn the property
rights of persons owning the naked fee of the streets when such
power is necessary to make effectual its determination in regard to
the necessity of such railroad.   The absurdity of ascribing to the
Legislature an intention to take away the power of the court to con-
demn property rights in streets is further apparent when we con-
sider that such property rights cannot be taken without a determina-
tion by the court that it is necessary for public use, and also in view
of the fact that property rights in the naked fee of a street are, in
most instances, nominal only.   In this case it is stipulated that the
damage to the appellants by taking such property rights is six cents,
and by consent the decree herein fixes the appellants' damage at
that amount, and directs that the same be paid to the appellants.
Serious consequences to public and private interests and the antago-
nism of the claimed construction of the statute to all other legislation
on the subject are legitimate considerations · in determining the
intention of the Legislature.

In *Adee* v. *Nassau Electric R. R. Co.* (72 App. Div. 404) it was necessary for the court to determine the question here involved and we agree with the conclusion reached in that case. We think that a further reference to the statutes will show that at no time prior to the enactment of chapter 933 of the Laws of 1895 could a street railroad corporation take private property by condemnation, except such as was incidential to the erection, maintenance and operation of its railroad on streets, avenues, roads and highways.

Prior to 1884 street railroad corporations were formed pursuant to the provisions of chapter 140 of the Laws of 1850 and the amendments thereto (*Matter of Washington Street Asylum & P. R. R. Co.*, 115 N. Y. 442), and proceedings for the condemnation "of any real estate required for the purposes of its incorporation" were by that act expressly authorized. (§ 13.) The original street surface railroad act (Laws of 1884, chap. 252) provided: "Any company organized as aforesaid * * * may construct, maintain, operate, use and extend a railroad * * * on the surface of the soil, through, upon and along any of the streets, avenues, roads or highways of such cities, towns and villages, and also through, along and upon any private property which said company may acquire for the purpose. * * *" (§ 3.)

It also provided: "Such corporation shall also have all the powers and privileges granted and be subject to all the liabilities imposed by this act, or by the act entitled 'An act to authorize the formation of railroad corporations and to regulate the same,' passed April second, eighteen hundred and fifty, and the several acts amendatory thereof, except as the said acts are herein modified." (§ 1.)

In *Matter of South Beach R. R. Co.* (119 N. Y. 141) the court held that the power to condemn land under the act of 1850 was not general or unlimited, and that under it a company could condemn only such and so much land as the proper execution of its corporate purposes shall require and render necessary; and it was there held that the chief element of a street railway as authorized by said act of 1884 is that it is built upon and passes along streets and avenues for the convenience of those living and moving thereon; and that such street railroad could condemn only such private property as was incidental to the general purposes of a railroad to be erected, maintained and operated on streets; and in the discussion of this

question the court say : "If we upheld this contention (that any private property can be condemned) it might be possible to build a street railway for a city along a hundred feet of a street and then condemn the land in the centre of the blocks all the way to its terminus."

Chapter 565 of the Laws of 1890, known as the " Railroad Law," was intended as a consolidation and revision of the existing laws upon the subject of railroads. The general provisions in chapter 565 of the Laws of 1890 are applicable to street surface railroads. (*Matter of Stillwater & M. St. Ry. Co.*, 171 N. Y. 589 ; *Buffalo, etc., R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 72 Hun, 583.)

Section 4, subdivision 2, of said act (Laws of 1890, chap. 565) gave every railroad corporation power " to acquire by condemnation such real estate and property as may be necessary for such construction and maintenance."

By section 2 of said act (Laws of 1890, chap. 565) it is required that the certificate of incorporation should state the kind of road to be built or operated. Sections 6 and 7 of said act, relating to the location of the route and the acquisition of title to real property, do not except street surface railroads, but expressly include therein any railroad corporation.

Article 4 of said act (Laws of 1890, chap. 565), relating to street surface railroads, does not in terms authorize the building of such street surface railroad upon private property (§ 90). Notwithstanding the failure of said act to expressly authorize the building of street surface railroads upon private property, we assume that the location of a street surface railroad would not be confined strictly to streets and highways, but that private property could be taken where it was incidental to the general purposes of the corporation. (Nellis Street Surface Railroads, 11.)

The Railroad Law was generally amended by chapter 676 of the Laws of 1892, and as so amended it was expressly provided that there should be stated in the articles of incorporation of a street surface railroad corporation the names and description of the streets, avenues and highways in which the road is to be constructed. (§ 2, subd. 11.)

By said act (Laws of 1892, chap. 676) section 6, relating to the

location of the route, expressly excepts from its provisions street surface railroad corporations.    This exception was made for the obvious reason that the act did not contemplate that a street surface railroad corporation would build, maintain and operate its road upon private property.

By chapter 434 of the Laws of 1893 section 90 of the Railroad Law was amended so as to read as follows : " The provisions of this article shall apply to every corporation which under the provisions thereof, or of any other law, has constructed or shall construct or operate, or has been or shall be organized to construct or operate, a street surface railroad or any extension or extensions, branch or branches thereof, for public use in the conveyance of persons and property for compensation, upon and along any street avenue, road or highway in any city, town or village, or in any two or more civil divisions of the State, must comply with the provisions of this article.    Any street surface railroad corporation, at any time proposing to extend its road or to construct branches thereof may, from time to time, make and file in each of the offices in which its certificates of incorporation are filed, a statement of the names and description of the streets, roads, highways and private property, in or upon which it is proposed to construct, maintain or operate such extensions or branches.    Upon filing any such statement, and upon complying with the conditions set forth in section ninety-one of the Railroad Law, every such corporation shall have the power and privilege to extend, construct, operate and maintain such road, extensions or branches on the streets, roads and highways named in such statement, and also upon any private property which it may acquire for such purpose."

In this act (Laws of 1893, chap. 434) for the first time since the general consolidation and revision of the Railroad Law, the words "private property " are used in connection with street surface railroad corporations, and as so used they relate to extensions or branches only.  · No reference is made in this act to the original certificate of incorporation of street surface railroad corporations, and under the decision in *Matter of South Beach R. R. Co.* (*supra*) the words " private property " therein must refer to such private property as is incidental to the general purposes of the corporation.

By chapter 933 of the Laws of 1895 section 90 of the Railroad Law was again amended. By this amendment it is assumed that a street surface railroad corporation can set forth in its certificate of incorporation not only the names and description of the streets, avenues, roads and highways in which the railroad is to be constructed, but also a description of private property over which it is proposed to construct and operate such railroad. Provision is also made by this amendment for filing, in the office of the clerk of the county in which the road is to be constructed, a map as provided in section 6 of the Railroad Law, and it is also therein provided : " And all provisions of section six of the act hereby amended so far as applicable shall apply to the route so located." Express authority is given by this amendment to acquire title to any real property or any right or easement therein required for the purpose of its railroad by condemnation in the manner and by the proceedings prescribed by the Condemnation Law. (See Code Civ. Proc. §§ 3357–3384.) Then follows the prohibition as follows : " Nothing in this section shall be deemed to authorize a street railroad corporation to acquire real property within a city by condemnation."

The amendment to section 90 (Laws of 1895, chap. 933) is a radical and important one. It contemplates the organization of a street surface railroad corporation for the purpose of building, maintaining and operating a street railroad on private property as well as upon streets, avenues, roads and highways. It for the first time authorizes condemnation of private property other than such as is incidental to the location, maintenance and operation of its railroad on streets, avenues, roads and highways.

Notwithstanding the comprehensive meaning of the words " real property " we are of the opinion, in view of all the legislation on the subject of the rights of way for railroads, that the Legislature only intended by the prohibition to prevent street surface railroad corporations from condemning private property in cities for the purpose of building, maintaining and operating their railroads thereon and did not thereby intend to prevent such street surface railroad corporations from obtaining by condemnation the property rights of the owners of abutting land in the bed of the street or highway in front of their premises. Any other construction would make the Railroad Law as a whole inconsistent, unreasonable and absurd.

The control of the local authorities is subject to the acquisition of the property rights of the owners of the soil, which property rights the court has power to condemn and transfer to street surface railroad corporations on payment of the consideration to be ascertained and determined in such proceeding.

Judgment unanimously affirmed, with costs.