## HIRT ET AL. v. CITY OF CASPER
## HOLM ET AL. v. SAME

(Nos. 2162, 2163; June 11, 1940; 103 Pac. (2d) 394)

58

For the plaintiffs in error, there was a brief by *E. E. Enterline, Madge Enterline* and *George W. Ferguson* of Casper, and oral arguments by *Messrs. Enterline* and *Ferguson.*

For the defendant in error, there was a brief and oral argument by *W. J. Wehrli* of Casper.

*E. E. Enterline, Madge Enterline* and *Geo. W. Ferguson* in reply.

BLUME, Justice.

This is a condemnation proceeding under the power of eminent domain. The City of Casper, a city of the first class, seeks to construct a subway underneath the tracks of the Chicago, Burlington and Quincy Railroad Company, to be a part of North Center Street, and to

take the place of that part of that street which now crosses these tracks. The defendants are abutting property owners on North Center Street, and the city seeks in this proceeding to have their damages assessed which they will sustain by reason of the construction of the subway. Some of the defendants demurred to the petition. The demurrer was overruled. An order for condemnation was entered. A commission was appointed to assess the damages. They made their report. Some of the defendants demanded a trial by jury. The demand was granted, and the jury assessed the damages of the different defendants, including the damages sustained by the plaintiffs in error herein. Thereafter motions were filed by the latter, which, in substance, are to the effect that the trial court had no jurisdiction to cause the damages to be assessed herein. The specific points raised will be mentioned hereafter. The motions were overruled, and a final order was entered by the court. Thereupon proceedings in error were instituted to bring the case to this court for review. The petition in error of Laura Mai Holm, on behalf of herself and as guardian of her minor children, is separate from that of the other plaintiffs in error. The only point in her case, not involved in the other, relates to the allegation of the petition as to the guardianship of the minors. The two cases have been consolidated for argument in this court, and this opinion will dispose of both petitions in error.

■ It appears, inferentially at least, that the council of the City of Casper had not adopted a formal resolution authorizing the city attorney to institute the proceeding for condemnation herein. It is contended that that was necessary. The Council adopted a resolution on June 19, 1939, ratifying and confirming what had been done. The petition filed in the case contained no allegation that its filing was authorized by the council. Section 38-204, Rev. St. 1931, states the essentials nec-

essary to be contained in the petition. That does not include an allegation of the adoption of a resolution as above mentioned. The petition appears to contain all the allegations required by the statute. The court determines the "right to make the appropriation." Sec. 38-214. In view of these facts we do not think that the lack of the adoption of a formal resolution previous to the institution of the proceedings was fatal, and that the ratification was sufficient. It has been so held. Kountze Bros. v. Proprietors etc., 58 N. J. L. 303, 33 Atl. 252; Lake Shore etc. Ry. Co. v. B. & O. & C. R. Co., 149 Ill. 272, 37 N. E. 91; State ex rel. v. Superior Court, 71 Wash. 84, 127 Pac. 591. In City of Winchester v. Ring, 312 Ill. 544, 144 N. E. 333, it was held that when the petition need not recite the authority for bringing the proceeding, the authority of the counsel bringing it will be presumed.

■ Section 38-206, Rev. St. 1931, provides that "if the proceedings seek to affect the property of persons under guardianship in this state, the guardian shall be made a party defendant." That was done in this case. The petition alleges "that a part of the lands which will be injuriously affected or damaged by the construction of said subway is the south 51 feet of lot numbered 3 in block numbered 55 in the city of Casper, Natrona County, Wyoming, and that the owners of said tract are Laura Mai Holm, and Curt G. Mai and Marjorie Elma Mai, minors, and the said Laura Mai Holm is the duly appointed, qualified and acting guardian of said minors." It is contended that the allegation should have been more specific in that it should have been alleged that the guardian was the guardian of the *estate* of said minors. Laura Mai Holm appeared in the proceeding to defend the interests of the minors and set aside the orders which had been made in the case. When she did so, she evidently thought that she was the guardian of the estate of the minors. We think, at

least in view of that fact, we should not indulge in any presumption that the guardianship was a limited one. Furthermore, it may have been shown in the trial of the case that Laura Mai Holm was actually the guardian of the estate of the minors. The evidence is not incorporated in the record.

■ The main contention herein is that the city has no right to institute a condemnation proceeding, under the power of eminent domain, solely for the purpose of determining the damages to abutting property owners. It is claimed that no such proceeding is authorized, unless property is actually and physically taken, as is not true in the case at bar; that when only a question of damages is involved, it must be left to an independent action brought by the person damaged, and authorized by reason of Section 33, Article 1, of our Constitution, which provides that "private property shall not be taken or damaged for public or private use without just compensation." The plaintiffs in error have had the benefit of an assessment of their damages by a commission, and the benefit of a trial by jury. Still they are not satisfied, though they do not question the right of the city to construct the viaduct. They advance as a reason for that dissatisfaction that they are not able to tell before the subway is constructed what their damages will be; that only time can tell, and that hence they should have the right to have these damages determined, in an independent action therefor, when they have had time to ascertain what effect the subway will have upon their property. They call attention, for instance, to the fact that one of the properties is a hotel, and that they can not tell at this time whether the patronage thereof will increase or decrease in the future. We have no doubt that in some instances, and perhaps in the instant case, it would be more advantageous to the abutting property owner to give him time to see the effect of the work which the city is

undertaking. That the contention of plaintiffs in error is not lacking in merit has at times been recognized by the courts. Penn. Mut. Life Ins. Co. v. Heiss, 141 Ill. 35, 33 A. S. R. 273; Hardy v. Simpson, Road Commissioner, 118 W. Va. 440, 190 S. E. 680; State Highway Comm. v. Smith, 146 Okl. 243, 293 Pac. 1002. But in neither of these cases was it held that the adjacent property owner had the absolute right to bring an action for damages, rather than to have them determined in a condemnation proceeding. In fact no cases have been called to our attention which uphold the claim made in this case.

The extent of the contention of counsel is not clear. Plaintiffs in error are not interested in the question whether anyone else's property is taken. So far as their own damage is concerned, it is wholly immaterial what may or may not be done in connection with any one else's property. So that, if the contention of counsel has any force at all, it must mean that even though someone else's property may be actually and physically taken, and condemnation proceedings for that may be necessary, still the damages of parties whose property is not actually and physically taken cannot be assessed in that proceeding, but must always be left to an independent action brought by the person damaged. Such action would not be barred until the statute of limitations has run, thus compelling the city to wait, perhaps, for years, before it will know what it will actually have to pay, and the amount thereof, depending on the number of persons damaged, might be very large. That such a result is undesirable would seem to be clear. Lewis, Eminent Domain (3rd ed.) Section 965 (and see Gillespie v. Board, 47 Wyo. 61) states that the city may abandon a project if it finds that its cost will be too great. If that is so, then, necessarily, the contention of counsel for plaintiffs in error cannot be upheld. In any event, while a person damaged by the action of a

city is entitled to the actual damages sustained by him, there can be no doubt that the city is interested in knowing, at the time of the beginning of a project for improvement, what the cost will be, and in balancing the interests of private individuals against that of the public, we should not, we think, require the city to submit to the delay above mentioned, where, as in the case at bar, the statute permits the ascertainment of damages at the time of the beginning of a project and does not—clearly at least—require that it should be left to an independent action brought by the person damaged.

The proceedings for condemnation by cities of the first class are, as will be noted hereafter, governed by the provisions relating to condemnations by a railroad company. And counsel for plaintiffs in error, to sustain their theory above mentioned, cite us to section 38-223, Rev. St. 1931, which provides that the certificate of commissioners or the verdict of a jury must contain, First, an accurate description of the land taken; Second, the value of the land or property actually taken; and Third, the damage to the land affected, but not taken. Section 38-224, provides that the condemnor shall, when the proceedings are perfected, become seized in fee of the property taken, etc. Counsel call attention to the fact that the provisions of the last section above mentioned, and the provision of the preceding section, that the value of the land actually taken shall be stated by the jury, etc., cannot be carried out in a condemnation proceeding such as is involved in this case, and that, accordingly, their theory above mentioned must be correct. In other words, they contend that all the provisions cited are mandatory in all cases. But we think that they construe the statute too literally. The intention of the legislature must be considered. It meant to make the provisions covering condemnation proceedings sufficiently broad to cover all

cases. A statute may be mandatory in some respects and not in others. 59 C. J. 1072. In so far as it is inapplicable to the plaintiffs in error, and in so far as the failure to comply therewith can not prejudice them, it cannot be considered mandatory as to them. Lewis' Sutherland on Statutory Construction (2nd ed.) Sec. 611; Granite Bituminous Paving Co. v. McManus, 144 Mo. App. 593, 129 S. W. 448. We do not think that, simply because some provisions in a particular section of a large legislative act do not apply in certain cases, it necessarily follows that none of the provisions of the chapter apply. We have not been cited to any cases so holding. In any event, the provisions must be construed in conjunction with other statutory provisions applicable, and all of them together, we think, make the intention of the legislature clear.

Section 22-353, Rev. St. 1931, provides among other things that "damages sustained by the owners of property abutting thereon (on any street) for any property taken or injured in the establishment, extension of, or vacation of any street, avenue, alley or lane, shall be ascertained in the manner provided herein." The only method provided is in the next section, namely, in a proceeding for condemnation. While it is not clear that the case at bar involves any "establishment" or extension of a street, the statutory provision quoted goes far in refuting the theory advanced by counsel for plaintiffs in error herein; for it contains no intimation that the damages for property merely injured cannot be ascertained in such proceeding, but, if given a natural meaning, would clearly seem to show the contrary. And that is true beyond argument in the case of the vacation of a street. In such case there is no actual, physical taking of any property of the abutting owner in the sense contended for by counsel; there is a mere injury or damage. And yet that injury and damage must be

determined by a condemnation proceeding. Section 22-354, Rev. St. 1931, provides:

"They shall have power to exercise the power of eminent domain, and take private property for public use within or without the city, for the purpose of erecting or establishing market houses and market places. streets, alleys, public buildings, cemeteries, or for any other necessary or authorized public purpose; provided, however, that in all cases the city shall make the person or persons whose property shall be taken or injured thereby, adequate compensation therefor, to be determined by proceedings instituted in the district court of the county where such city is located, and conducted as by law provided for condemnation by railway companies, and with the same rights, power and privileges granted to railroad companies in such cases."

We may note that, though counsel for plaintiffs in error do not agree ,the proviso in the foregoing section is hardly distinguishable from Chapter 118, Oklahoma Session Laws of 1927, mentioned in State Highway Commission v. Smith, supra, and under which, it was held, compensation for consequential damages are to be assessed in the case of a construction of a road, when none of the property of the person damaged is actually and physically taken. Counsel for plaintiffs in error contend that in the clause "provided, however, that in all cases the city shall make the person or persons whose property is taken or injured *thereby,*" the word "thereby" refers to the injury occasioned by the actual taking of property—that is to say, that it covers merely the consequential injury to the whole of the property, part of which is actually taken. Such construction is possible. But it is probable that the term "thereby" refers to the exercise of the power of eminent domain, mentioned in the first clause of the section. Such construction is more in harmony with the provisions of the preceding section already quoted, and more in harmony with the provision in chapter 38 of the statutes. Sec-

tion 38-212 provides that new parties may come into a case for condemnation whose property "will be taken or injuriously affected by the proceedings." Section 38-202 provides that compensation shall be made for "any real property taken or injuriously affected." Section 38-219 states that the jury shall determine the compensation to be made to the owners "for the taking or affecting of such real property." None of these sections limit the damage to cases caused to property "actually and physically taken," but cover all cases whether any property is actually taken or not.

The sections last mentioned, namely those under Chapter 38 of the Revised Statutes, relate to the right of eminent domain of railroad companies. The chapter was enacted in 1888. The constitutional provision above mentioned (Sec. 33, Article 1) was not adopted until 1890. Counsel call attention to this fact, and then argue that "under the circumstances the statutes have no application whatever in the mere assessment for damages." We do not understand the reasoning of counsel. The term "damaged" used in the constitution, and the term "injuriously affected" used in the various sections of the statute, are synonymous. Rigney v. Chicago, 102 Ill. 64; Gottschalk v. R. R. Co., 14 Nebr. 550, 16 N. W. 475, 17 N. W. 120. In other words, the statutes of this state recognized the fact, prior to the adoption of the constitution, that in a proceeding of eminent domain compensation should be made not only for property actually and physically taken, but also for damages which would be sustained by reason of the exercise of the power. The constitution merely confirmed a rule which had already previously been adopted by the legislature. The reason for the insertion of the terms above mentioned in the statute and in the constitution respectively is explained by the fact that some of the courts had previously construed the terms "taken" and "property" rather narrowly. The various

constitutions had ordinarily provided that private property should not be taken for public use without compensation. And courts had held that no compensation was required to be made when no property was actually and physically taken, but was merely damaged. Thus Sedgwick in his Construction of Statutory and Constitutional Law (2nd ed., 1874) 456-458, states that "it seems to be settled that, to entitle the owner to protection under his (constitutional) clause, the property must be actually taken, in the physical sense of the word, and that the proprietor is not entitled to claim remuneration for indirect or consequential damage, no matter how serious and unquestionably resulting from the exercise of the power of eminent domain." But the author added: "I cannot refrain from the expression of the opinion that this limitation of the term *'taking'* to the actual physical appropriation of property or a divesting of the title is, it seems to me, far too narrow a construction to answer the purposes of justice, or to meet the demands of an equal administration of the great powers of government." Some of the courts, from time to time, joined in this dissent. Constitutional provisions were amended in a number of states to read substantially like our own constitutional provision above quoted. And it is undoubtedly in conformity with this dissent that the law of 1888, giving railroad companies the power of eminent domain, contained the clause that compensation should be made for property injuriously affected. A good review of the subject is contained in the case of In Re Forstrom, 44 Ariz. 472, 38 P. (2d) 878. It is shown in that case that a number of courts permit the assessment of damages and allow compensation for injury under constitutional provisions which merely provide that no private property shall be taken without just compensation. See also 20 C. J. 666.

The contention made in this case has seldom, if ever,

been made before. Usually the contention has been either that the condemnor had no right to take the property right sought to be acquired at all, or that he or it should cause the damages to be assessed in a condemnation proceeding before going ahead with the work sought to be done. Thus in Penn Mutual Life Ins. Co. v. Heiss, 141 Ill. 35, 33 A. S. R. 273, and Mercer County v. Wolff, 237 Ill. 74, 86 N. E. 708, cited to us by counsel for the plaintiffs in error, the question was not, as in the case at bar, that the condemnor had no right to have the damages assessed by condemnation proceedings, but whether it could, under the circumstances, be compelled to do so. In fact what counsel ask us to do is to engraft an exception upon a general rule, as we shall see. Of course, the fact that the general rule is contrary to that asserted by plaintiffs in error, does not necessarily show that our statutes are in conformity therewith. Nevertheless its existence calls for caution in adopting a technical construction of our statutes contrary thereto, and makes it probable, in the absence of special circumstances to the contrary, that our legislature intended to announce a rule which is in accordance with the customs of the country. The record in this case does not disclose just how the plaintiffs in error are damaged—whether it is by a change of grade, or whether they are partially or wholly deprived of direct access to the street as it will be when the subway is constructed. In any event it would seem that the point involved is the ingress and egress to and from the street. The right which the plaintiffs in error have in the street is an easement. Hitt v. Greensboro, 201 N. C. 515, 160 S. E. 748; Sinsheimer v. Underpinning & F. Co., 178 App. Div. 495, 165 N. Y. S. 645; Bourg v. R. Co., (Mo.) 245 S. W. 43. It has often been held that an easement may be taken or interfered with by condemnation proceedings. 20 C. J. 593. Lewis on Eminent Domain, sections

65 and 223, holds that interference with or destruction of such easement is a "taking." He construed the term "taking," not narrowly, but in a broad sense, thus destroying the force, if it has any, of the theory of counsel for the plaintiffs in error. And, after all, a word, a name, is merely intended to stand for something. In that sense it is a mere matter of the mind, a mere metaphysical entity. See In Re Forstrom, supra. We must search for the essence which language is intended to represent in a particular case. Doing so here, we find that to interfere with an easement, such as is involved in the case at bar, is, in essence, an injury or damage, to the property owned by the abutting property owner, and that, in turn, in essence, is a taking in the broad sense of that term, which must be compensated for under our constitution, unless countervailing reasons to the contrary exist. The fact is not altered when only a part, rather than the whole easement is condemned. To take one out of ten, is just as much a taking as to take the whole ten. Lewis on Eminent Domain, Sec. 412, states that "the rights of * * * abutting owners may be condemned without taking any estate in the land to which they pertain." In The Town of Rensselaer v. Leopold, 106 Ind. 29, 5 N. E. 761, the court stated:

"That the owners of lots abutting on a street have a peculiar and distinct interest in the easement in the street, is a well established doctrine of law. * * * This right cannot be appropriated and taken from him against his consent without compensation. * * * This peculiar right of the abutting lot-owner may, like any other private property, be made subject to the power of eminent domain, and in the exercise of that power, may be taken for public use by due process of law."

In Schaaf v. Ry. Co., 66 O. S. 215, an interurban railway company interfered with an easement on a highway by constructing a line thereon. The court held

that the abutting property owner was entitled to compensation for such interference, and to an injunction unless proceedings in condemnation were instituted. The court stated in part:

"It was the primary duty of the railway company, before attempting to take from the plaintiffs, property rights which the constitution guarantees them, to institute in a proper tribunal the necessary appropriation proceedings to obtain an assessment of compensation and damages to them."

The case was followed in Callen v. Light Company, 66 O. S. 166, 58 L. R. A. 782, where the interference with the easement in a street was by placing electric light poles and fixtures along the curb. So in Dunnebacke v. Ry. Co., 248 Mich. 450, 227 N. W. 811, it was held that where a railroad company attempts to interfere with a right in the nature of an easement, it will be enjoined unless it commences proper condemnation proceedings. See similar in effect Gillander v. New York, 127 App. Div. 612, 111 N. Y. S. 1051. In Adee v. Electric R. Co., 72 App. Div. 404, 76 N. Y. S. 589 and Schenectady Ry. Co. v. Peck, 88 App. Div. 201, 84 N. Y. S. 759, it was held that a street railway company may obtain the right to a partial use of a street as against abutting property owners by proceedings in condemnation. The same rule was applied to a telephone company in New Union Telephone Co. v. Marsh, 96 App. Div. 122, 89 N. Y. S. 79. In Garroux v. Greenville, 53 S. C. 578, 31 S. E. 597, it was held that the proceeding for condemnation provided by law was the exclusive remedy in order that an abutting property owner might obtain damages for a change of grade of a street. And the right of a city to bring such proceedings in order to have the damages determined was recognized in Tremayne v. St. Louis, (Mo.) 6 S. W. (2d) 935. In People v. Winthrop, 120 App. Div. 801, 105 N. Y. S. 746, the city narrowed a street. The court

held that the abutting owner was entitled to damages therefor, and issued a writ of mandamus to compel the city to institute condemnation proceedings. And the right of the abutting property owner, whose ingress and regress had been disturbed by reason of a change made in a street, to compel the city to institute condemnation proceedings has been recognized in a number of cases; and these cases, making it the duty of the city to do so, recognize, of course, that the city may do so in its own motion, and that under circumstances very similar to, or the same as those presented in the case at bar. Gibson v. Greenville, 64 S. C. 455, 42 S. E. 206; Klaus v. Jersey City, 69 N. J. L. 127, 54 Atl. 220; Haycock v. Jannarone, 99 N. J. L. 183, 122 Atl. 805; People v. Green, 3 Hun. 755; Gilligan v. Providence, 11 R. I. 258; Aldrich v. Providence, 12 R. I. 241; Klement v. Commission, 119 N. J. L. 600, 197 Atl. 896; Grunewald v. Chicago, 371 Ill. 528, 21 N. E. (2d) 739. In the last cited case the court states that "it is the duty of a municipality constructing a public improvement, before making the same, to settle damages, if any, to adjacent property not taken by the improvement, and if such settlement cannot be made, to institute proper proceedings under the Eminent Domain Act to ascertain such damages, and the officer or officers having control of the improvement may be compelled to institute such proceedings." It is true that the court also held that the abutting property owner may, alternately, bring an action for damages. But that, obviously, is only in case condemnation proceedings are not brought by the city, or the proper officer thereof. If it is the duty of the city to bring condemnation proceedings, as held by the court, clearly it has the right to do so, and that is the point involved in the case at bar. In Hardy v. Simpson, Road Commissioner, 118 W. Va. 440, 190 S. E. 680, and Riggs v. State Road Commissioner, 120 W. Va. 298, 197 S. E. 813, it was

held that when highway construction or improvement results in damages to adjacent property without an actual taking thereof, it is the duty of the Road Commissioner to institute condemnation proceedings, although in such case (that is to say when no property is actually, physically taken) it is only necessary to bring such proceedings within a reasonable time, and not necessarily before the work is commenced. In In Re Forstrom, supra, it was held that the damages caused to abutting property owners by reason of the construction of a subway may be assessed in a condemnation proceeding under a constitution and statute which merely provide that no private property shall be taken for public use without compensation, and contain no provision as to damages. If that is true, it must be so much more true under constitutional and statutory provisions such as ours. Counsel for plaintiffs in error seek to distinguish that case from the one at bar, by calling attention to the fact that the court in that case referred to, and relied upon a statutory provision which allows damages when a grade has been changed. And counsel say that "it is needless, perhaps, to mention that we have no such statutory provisions set forth in the opinion of the Arizona court." Counsel, it is plain, have entirely missed the meaning of the statutory provision just mentioned, and what the court said in that connection. The reference has nothing whatever to do with the question as to whether the damages should be ascertained by a condemnation proceeding or by an independent action. It reaches much deeper than that. It goes to the question as to whether an abutting property owner has, under the circumstances shown in that case, any right to damages at all. Courts are divided on the question as to whether or not abutting property owners are entitled to any damages for a change of grade—the point referred to in the Arizona case. See cases in Cooley's Constitutional Limitations

(8th ed.) pages 1152-1157; 20 C. J. 692-696. The greater number of cases, apparently, hold that no damages are recoverable for the reason that the city reserves the right when a street is established to change the grade at any time, and that a person acquires a lot abutting thereon subject to such right of change. The Arizona statute, above mentioned, however, as the court points out in the case last cited, expressly grants the right to compensation in such cases. Counsel say that we have no such statute. The question then would arise as to whether the plaintiffs in error are entitled to any damages at all, either in the proceeding in this case or in any other. The city has not raised the point. It is willing to pay the damages. Hence it is not necessary to decide that question. It seems that in City of Rawlins v. Jungquist, 16 Wyo. 403, 94 Pac. 464, it was assumed, rather than decided, that an abutting property owner is entitled to damages when the grade of a street is changed.

The judgment in this case must be affirmed and it is so ordered.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.