Morris Hillquit, for appellant.

William W. Butcher (Wm. M. Moore, on the brief), for respondent.

JENKS, J. I think that this judgment must be affirmed. Only one question presented by the appeal need be noticed. The plaintiff sues as the widow and administratrix of her husband to recover a benefit payable to her after her husband's death by virtue of his membership in the society represented by the defendant, its president. Section 73 of the constitution of the society, so far as pertinent, reads:

"Any member in arrears for dues or assessments for eight weeks stands suspended from benefit. If the member within two weeks from such suspension places himself within the eight-week limit and remains within such limit for ninety days from date of suspension, he shall be restored to his previous rights. Failing to comply with the above, he shall stand suspended from the union."

This member neglected to pay his dues from November 10, 1906, until January 19, 1907. On that day he paid such an amount as was sufficient to meet his dues until April 6, 1907. Thus having been suspended from benefits he, within two weeks thereafter, brought himself within the 8-week limit, and also by his advance payment kept himself within that 8-week limit for 90 days thereafter, for the 90 days expired on April 19th, and, as his dues were paid in advance until April 6th, he could not, of course, between April 6th and April 19th have fallen outside an 8-week limit. But this member died on February 24th, and the contention of the defendant is that the member did not keep within the 8-week limit for 90 days. The purpose of this provision is not to insure that the member should live for a period of 90 days, but that his dues should not fall into arrears during that period. This member met that condition by his advance payments, which, when accepted by the society, made it impossible for him to fall into arrears for any 8 weeks during the 90 days. And, by the acceptance of the dues in advance so as to make this condition impossible, I think that the defendant waived any right which it had to contest the claim upon section 73 of the constitution. Titus v. Glens Falls Insurance Company, 81 N. Y. 410; Herman on Estoppel and Res Judicata, § 1206; Bacon on Benefit Societies and Insurance, § 431.

The judgment is affirmed, with costs. All concur.

---

DUNCAN v. NASSAU ELECTRIC R. CO. et al.

(Supreme Court, Appellate Division, Second Department. June 5, 1908.)

1. EMINENT DOMAIN—TAKING PROPERTY—USE OF STREETS—ADDITIONAL BURDEN.

A street surface railroad is an additional burden to the land of adjoining proprietors who own to the center of the street, and a street railway company cannot impose the added burden without making compensation, and, when it commences to lay its tracks without agreeing with the adjoining proprietors or instituting condemnation proceedings, it is a trespasser.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 305–307.]

2. TRESPASS—DAMAGES—RIGHT OF RECOVERY.

The right to damages for a trespass depends on legal, and not equitable, rules.

3. INJUNCTION—RELIEF—DAMAGES ADDITIONAL TO INJUNCTION—TRESPASS.

Damages for trespass are allowed as an incident to injunctive relief, since equity, having jurisdiction of the cause, will grant legal as well as equitable relief for the purpose of settling all matters of difference in one suit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 417.]

4. EMINENT DOMAIN—RIGHTS OF PROPERTY OWNER—INJUNCTION—DAMAGES.

One suing for a trespass committed by a street railway company constructing and operating a street surface railroad is entitled to such damages as he has suffered from the trespass, and is entitled to an injunction unless the company as an alternative will pay him such sum as would be awarded in condemnation proceedings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 743–764.]

5. SAME—DAMAGES TO PROPERTY NOT TAKEN.

In condemnation proceedings, the owner is allowed. not only the value of the property taken, but compensation for the effect of the taking on the residue, considered with reference to the use to which the property taken is to be put.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 233–244.]

6. SAME—ELEMENTS.

A street railway company built a surface street railroad track without condemnation proceedings. Some years thereafter it began to operate cars thereon. *Held*, that an adjoining landowner could not recover as damages for the trespass in laying the track the loss in rental value resulting from the fear that some time cars would be operated on the track, because damages for such trespass would only occur when the trespass actually occurred.

7. SAME.

A street railway company constructing, maintaining, and operating a street surface railroad is answerable for the damages caused thereby to abutting property, but not for a shrinkage in fictitious value resulting from other causes, and it is not liable for the depreciation in the market value of abutting property, due to the character of the street, which had become fixed before the track was constructed.

Appeal from Special Term.

Action by Lorenzo Duncan against the Nassau Electric Railroad Company and another. From a judgment for plaintiff, defendants appeal. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

Augustus Van Wyck (James C. Church, on the brief), for appellants.

Charles H. Strong (Edwin A. Watson, on the brief), for respondent.

MILLER, J. The plaintiff, who owns the premises No. 885 Union Street, borough of Brooklyn, has recovered a judgment restraining the defendants from maintaining or operating a street surface electric railroad in front thereof unless they pay the sum of $5,000, and awarding him the sum of $2,333.33 damages for past trespasses. The plaintiff owns the fee to the center of the street, and his premises have a frontage on the street of 21 feet. Of course, no street surface railroad could pay at that rate for its right of way. That is not a reason for

reversing the judgment, but it invites a careful scrutiny of the record. The plaintiff's right to maintain this action is settled. Adee v. Nassau Electric R. R. Co., 72 App. Div. 404, 76 N. Y. Supp. 589; Id., 177 N. Y. 548, 69 N. E. 1120; Peck v. Schenectady Ry. Co., 170 N. Y. 298, 63 N. E. 357. This suit was brought in September, 1902, about four months after the decision of this court in the Adee Case, supra, which modified the judgment so as to allow the defendant to condemn. The validity of its franchise had theretofore been adjudged. Adee v. Nassau Electric R. R. Co., 65 App. Div. 529, 72 N. Y. Supp. 992; Id., 173 N. Y. 580, 65 N. E. 1113. The complaint prays for an injunction unless the defendants pay the damage caused to the plaintiff's property; and the appellants contend that the suit should be treated as a substitute for condemnation; that as it was pending when the right of the said defendant the Nassau Company to condemn was finally determined by the Court of Appeals, it was needless for said defendant to institute condemnation proceedings; and that no damage for past trespasses should be allowed. Such considerations may bear on the good faith of said defendant, but they do not affect the legal question involved. The courts declared, but did not make, the law. It was said in the Peck Case, supra, that the doctrine that a street surface railroad was an additional burden to the land of adjoining proprietors who owned to the center of the street had become a rule of property. Said defendant could not impose this added burden on plaintiff's property without making compensation, and when it commenced to lay its tracks without agreeing with him, or instituting condemnation proceedings, it became a trespasser. The appellants cite Am. Bank Note Co. v. N. Y. E. R. R. Co., 129 N. Y. 252, 29 N. E. 302, and Sperb v. M. E. R. Co., 137 N. Y. 155, 32 N. E. 1050, 20 L. R. A. 752, but what was said in those cases in reference to injunctive relief with alternative damages being a substitute for condemnation had reference only to the damages allowed as the alternative for an injunction. The right to damages for a trespass depends on legal, not equitable, rules. Such damages are allowed as an incident to injunctive relief, because equity having jurisdiction of the cause will grant legal as well as equitable relief for the purpose of settling all matters of difference in one suit. It follows that the plaintiff could recover such damage as he had suffered from the defendants' trespasses, and was entitled to an injunction, unless the defendants as an alternative pay him such sum as would be awarded him in condemnation proceedings. In condemnation proceedings the owner is allowed, not only the value of the property taken, but compensation for the effect of the taking on the residue, considered with reference to the use to which the property taken is to be put. City of Buffalo v. Pratt, 131 N. Y. 293, 30 N. E. 233, 15 L. R. A. 413, 27 Am. St. Rep. 592; Henderson v. N. Y. C. R. R. Co., 78 N. Y. 423. Every resulting injury from the trespass could be considered in awarding damages therefor. Kane v. N. Y. E. R. R. Co., 125 N. Y. 164, 26 N. E. 278, 11 L. R. A. 640. The so-called elevated railroad cases which involved only easements of light, air, and access are instructive, but are not in point.

The defendants' railroad is a double-track road. The track nearest the plaintiff's premises was laid in June, 1901, the other in April, 1903, and cars for regular passenger service commenced to run May 28, 1905. The plaintiff's evidence is that he bought his property in 1889 for $16,000, its then market value, and that its value depreciated to $15,000 in 1900, $13,500 in 1902, and $10,000 in 1906. The referee allowed, as the alternative for an injunction, damages amounting tc the entire depreciation since 1900; and, upon proof that rental value was usually 8 per cent. of the value of the property, he allowed as damages for the trespass $400 a year, 8 per cent. on $5,000 since June, 1901. The laying of the tracks in June, 1901, was a trespass, but it could not seriously have affected the usable value of the plaintiff's premises. A new trespass began in May, 1905, when the defendants commenced regularly to run cars. All the evidence in the case respecting annoyance and discomfort, and we think a trespasser must pay for all injury directly resulting from his trespass, relates to the period after the regular running of cars. The plaintiff occupied his own premises. The actual damage to him was the injury to the usable value, not the loss of rental value. We do not say that loss of rental value may not be shown unless the premises are rented, or that it may not in such case constitute a proper rule of damage for a trespass; but we do say that damages for a trespass commencing in 1905 cannot be awarded for a period commencing in 1901, and that such damages cannot be determined by an arbitrary rule for determining rental value without any proof that such rule has some relation to the question in hand. The plaintiff could recover such damage from June, 1901, as resulted from the laying of the tracks, and from May, 1905, such additional damage as resulted from the new trespass; i. e., the running of cars. The permanent damage to the property is allowed in lieu of an injunction, that resulting from the temporary interference with its use by the trespass is allowed as damages for the trespass, and the latter must not include the former. The damage for the trespass depends entirely upon its character and extent. Whatever damages to the usable value of the property resulted from the presence of the defendants' tracks in the street could be recovered for that trespass, and whatever resulted from the running of cars could be recovered for that trespass, and upon proper proof such damage might be measured by the loss in rental value, but the connection between the loss and the trespass would have to be shown, likewise the relation between rental and usable value. To be more specific, the plaintiff could not recover as damages for the trespass in laying tracks in the street a loss in rental value resulting from the fear that some time cars would be run on those tracks, because damage for that trespass would only occur when the trespass occurred. It seems plain that the damage for trespass was computed by an arbitrary rule which was not shown to bear any relation to the question in hand.

I think the depreciation in the value of the plaintiff's property resulted, in large measure at least, from causes for which the defendants are not responsible. A number of houses, including the plaintiff's, was built on the north side of Union street, between Seventh and Eighth avenues, in 1884 or 1885, and it was evidently thought then

that Union street in that section would be devoted exclusively to fine private residences; but it appears that in the development of that section of the city (the Park Slope, as it is called) other parallel streets became the fine residence streets, while Union street never acquired that character, with the result that the values of Union street property, based on expectations, have depreciated, while the values of property on streets, which, in fact, became exclusively private residence streets, have appreciated. That result has been attributed to the defendants' railroad, and upon it the entire award for damage to the plaintiff's property was based. But the record discloses that the status of Union street was fixed long before the defendants' road was built. The plaintiff's residence is near the middle of the block between Seventh and Eighth avenues. On that block, besides the private residences, there was a private stable, business places at the corners of Seventh avenue and Union street, and a row of houses had been built, intended for flats, but converted into separate private residences at the intercession of residents of Eighth avenue. On the block west, between Seventh and Sixth avenues,. there were private stables, a number of livery and boarding stables, flats, and a few private residences. On the block east between Eighth and Ninth avenues were vacant lots, private residences, an apartment house, a clubhouse, and a restaurant, or roadhouse. On the southwest corner of Seventh avenue and Union street, within half a block of the plaintiff's residence, was a large livery and boarding stable. The plaintiff's theory is that the character of Union street was determined in anticipation of the building of a street railroad. It appears that there had been a decline in values for 10 years before the road was built, and, while the witnesses say that was a dull period for real estate, they attribute the decline in values to the character which the street was assuming. One witness says that the marked decline began in 1892, when it appears that the agitation over the granting of a franchise for a street railroad began. If, as a result of that agitation and in anticipation of the coming of a railroad, the street lost its chance of becoming a strictly private residence street, and the development of that character passed on to other streets, it is difficult to perceive any legal reason for compelling the defendants, the building of whose road commenced in 1901, to pay for the frustrated hopes of those who built or purchased more than a decade before.

But I think the evidence discloses other causes, besides the agitation over the building of the street railroad, for the character which the street had assumed when construction of the road began. Union street is the only direct street from Hamilton Ferry across the Gowanus Canal to the Prospect Park Plaza, directly across which begins the Eastern Parkway leading to very rapidly developing sections of Brooklyn. It was bound to be a traffic street, and in view of that it was paved with granite blocks, while the parallel streets have asphalt pavements. It appears in the evidence that there is very heavy trucking in the street, particularly of coal, lumber, brick, and the like, from the canal. It was inevitable that any development of an exclusively private residence character would be diverted to other more suitable streets at the expense of whatever development of that character might

start in Union street.  The defendants are answerable for the damage caused by the construction, maintenance, and operation of their railroad, but not for a shrinkage in fictitious values resulting from other causes.  So far as disclosed by the evidence, the depreciation in the market value of plaintiff's premises has been due to the character of Union street, which had become fixed long before the defendants' road was constructed, and an award based on such depreciation should not be permitted to stand.

Judgment reversed and new trial granted, costs to abide the final award of costs.  All concur.